ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. A. Z. GOLDSTEIN.

No. 3315.   Decided November 29, 1922.

(245 S. W., 226.)

**1.—Carriers—Rates—Interstate Commerce Commission—Jurisdiction.**

A controversy between shipper and carrier interstate over rates charged on a shipment of lead turned on the question whether the article, in the form in which it was shipped, was properly classed as "scrap lead" or "pig lead," these taking different rates in the published tariffs of the Interstate Commerce Commission, and the evidence as to the proper classification of this shipment conflicting. *Held*, that the issue was not properly determinable

112 Tex.—7

by a state court in the absence of any prior action or award by the Interstate Commerce Commission settling such classification.    (pp. 102, 103.)

### 2.—Same—Federal Statute.

The effect of U. S. Comp. Stats., Section 8569, subdiv. 7, and section 8573, subdiv. 9, and 22, is to require action by the Interstate Commerce Commission to determine a claim for overcharge dependent on the proper classification of the shipment. Its object, to establish and maintain uniform rates, would be defeated if the classification, dependent on conflicting evidence as to the accepted meaning of the terms employed, were left to the varying determination of juries in diverse state courts. Texas & Pac. Ry. Co. v. American Tie & Lumber Co., 234 U. S., 138, followed.    (pp. 101-103).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from the County Court of Tarrant County.

The question certified having been by the Supreme Court referred to the Commission of Appeals, Section A, and its opinion thereon adopted by the Supreme Court,. the same is here given as its answer to the Court of Civil Appeals.

*E. B. Perkins, Thompson, Barwise, Wharton & Hiner, George Thompson, Jr.,* and *Alfred McKnight,* for appellant.

The question of whether or not the commodity in this shipment comes under the classification filed with and approved by the Interstate Commerce Commission, of bar or pig lead, or whether it comes within the tariff duly filed with and approved by the Interstate Commerce Commission, of scrap lead, involves the construction of interstate tariffs, and is necessarily a suit under the Act of Congress to regulate commerce, and is a question upon which there is a great diversity of opinion, even among the experts upon the subject, and one that should be determined in the first instance by the Interstate Commerce Commission. Texas & Pacific Ry. Co. v. American Tie Co.,: 234 U. S., 138-149; Act to Regulate Commerce, Vol. 8, U. S. Complied Statutes, 1916; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S., 426; Pennsylvania Ry. Co. v. International Coal Min. Co., 230 U. S., 184; Mitchell Coal & Coke Co. v. Pennsylvania Ry. Co., 230 U. S., 247; St. Louis Southern Ry. Co. v. J. S. Patterson Const. Co., 104 N. E., 512-516.

It has been held on numerous occasions by the Supreme Court of the United States, that a compliance with Section 13 of the Act is necessary as a condition precedent before filing suit in any State or Federal Court for a violation of the Act based on an unreasonable, or discriminatory charge. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S'., 138; Mitchell Coal & Coke Co. v. Penna. Ry. Co., 230 U. S., 247; Morrisdale Coal Co. v. Penna. Ry. Co., 230 U. S., 304; Southern Railway Co. v. Tift, 206 U. S., 428.

It has also been held that where there is involved a question of administrative discretion, it is necessary that the complaint be referred

to the Commission in the first instance as a condition precedent to filing suit in any State or Federal Court. L. & N. R. R. Co. v. Cook Brewing Co., 223 U. S., 70; Mitchell Coal Co. v. Pennsylvania R. R. Co., 230 U. S., 247; Morrisdale Coal Co. v. Pennsylvania R. R. Co., 230 U. S., 304.

The court erred in submitting any question of liability whatever to the jury, because the State Court had no jurisdiction. Pennsylvania Railroad Co. v. Clark Bros. Coal Co., 238 U. S., 456; Sec. 9, Interstate Commerce Act, Vol. 8, U. S. Compiled Statutes, page 9163; Olcovich v. Grand Trunk Ry. Co. of Canada, 129 Pacific, 290; St. Louis Railway Co. v. J. S. Patterson Const. Co., 104 N. E., 512; Siggins v. Chicago & N. Ry. Co., 140 N. W., 1128; Van Patten v. Chicago, M. & St. P. Ry. Co., 74 Fed., 981; G. C. & S. F. Ry. Co. v. Moore, 98 Texas, 302; Penn. Ry. Co. v. Puritan Coal Min. Co., 237 U. S., 121; Carlisle v. Mo. Pac., 168 Mo., 656; Copp v. Railroad Co., 43 La. Ann., 511.

*Slay, Simon & Smith*, and *A. W. Christian*, for appellee.

The question as to appellee's right to recover the excess freight charge, complained of by him in this suit, was not an administrative question, and therefore, it was not necessary to make an application to the Interstate Commerce Commission, before filing suit against appellant in the courts. Gimbel Bros. v. Barrett, 215 Fed., 1004; Kansas City So. Ry. Co. v. Tonn, 143 S. W., 577; National Pole Co. v. Chicago & N. W. R. Co., 211 Fed., 65; 10 C. J., 454, sec. 716.

The right to file suit in a state court to recover an amount charged for transportation in excess of that fixed by law, existed under the common law, and was not superseded by the remedy provided by the Interstate Commerce Act, as it was expressly provided by Section 22 of that Act, that nothing in said Act should in any way abridge or alter the remedy then existing at common law, or by statute, but that the provisions of said Act were in addition to such remedies. Pennsylvania Ry. Co. v. Puritan Coal Min. Co., 237 U. S., 121; Eastern Ry. Co. of N. M. v. Littlefield, 237 U. S., 140; Ill. C. R. Co. v. Mulberry Hill Coal Co., 238 U. S., 275; Pennsylvania R. Co. v. Sonman Shaft Coal Co., 242 U. S., 120; Railway Co. v. Tonn, 143 S. W., 577; A. P. Brantley Co. v. Ocean S. S. Co., 63 S. E., 1129; Southern Pac. Co. v. Crenshaw Bros., 63 S. E., 865, 868; 10 C. J., 439, sec. 689; 451, sec. 710; 453, sec. 713; U. S. Compiled Statutes 1916, sec. 8595.

Mr. Presiding Judge SPENCER delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the County Court of Tarrant county, for civil cases, by plaintiff against defendant to recover alleged over-

charges on freight, on a shipment of lead from Corsicana, Texas to Granite, Illinois.

We take from the certificate the facts essential to a clear understanding of the question at issue.

Plaintiff alleged that the shipment was "scrap" lead, for which the published tariff rate, filed with and approved by the Interstate Commerce Commission, was thirty-three cents per hundred weight, at which rate the Railway Company agreed to transport the commodity but that upon arrival at destination the Railway Company claimed the commodity was "*pig*" or bar lead and charged and required the plaintiff to pay the rate for pig lead, to-wit seventy-five cents per hundred weight. The rate on pig lead was also filed with and approved by the Interstate Commerce Commission.

The defendant Railway interposed its plea to the jurisdiction of the State Court upon the ground that the question of whether the commodity came under the classification bar or pig lead; or whether it came within the tariff fixed for scrap lead involves a construction of the interstate tariffs, and that the suit, is, under the Act of Congress to Regulate Commerce, necessarily one to regulate commerce and is a question upon which there is a great diversity of opinion, even among experts upon the subject and one that should be determined in the first instance by the Interstate Commerce Commission.

The essential character of the commodity shipped and the form in which it was shipped are questions about which there was no serious conflict in the testimony.

Plaintiff's testimony was to the effect that though the commodity was one hundred per cent. lead and contained no tin or antimony or other ingredient than lead, and though it was melted in the form of "pigs" or bars, that such commodity could not be properly termed pig lead, if in fact it had been melted from scrap or used lead, and that pig lead is virgin lead from the mines and scrap lead is lead that has been used. Defendant's witnesses, who qualified as experts, testified that in the trade and among dealers in lead the character of pig lead is determined by the form in which it is melted; that when used lead has been melted into bar or pig form it is known to the trade as pig lead, but that pig lead does not necessarily have to come directly from the mines, and that scrap lead is lead that has been used and discarded.

There is no controversy as to the published rate for scrap lead from the point of origin to the point of destination.

The jury found, in answer to the only special issue submitted, that the commodity was scrap lead and judgment was rendered for the difference between the charge that was collected and the charge that would have been collectible under the rate for scrap lead.

Under this statement of facts there was a difference of opinion

among the justices of the Court of Civil Appeals for the Second District as to whether, it was necessary as a prerequisite to a recovery to obtain an award from the Interstate Commerce Commission. The majority were of opinion that the claim was one which should have been submitted to the Commission for its action and award. In support of this view, they relied on Texas & Pacific Ry. Co. v. American Tie & Lbr. Co., 234 U. S., 138, 58 L. Ed. 1255, 34 Sup. Ct., 885. Mr. Chief Justice Conner dissented from the conclusion reached by the majority, being of opinion that the issue before the court was merely one of identity of the commodity shipped—whether it was scrap lead or pig lead and that such issue was a question of fact properly to be passed upon by the jury without reference to action by the Commission. In justice to Mr. Chief Justice Conner, it should be stated that in his dissenting opinion which accompanies the certificate, he states that the views expressed by him are not free from doubt.

Based upon the foregoing facts the Court of Civil Appeals certifies the following questions:

Question No. 1. "Was the issue presented in the Trial Court one that was properly determinable by the State Court in the absence of any prior action or award by the Interstate Commerce Commission?"

Question No. 2. "Even if it is held that prior action by the Interstate Commerce Commission is not necessary in this case, still can the plaintiff maintain this suit in a State Court, in view of sec. 7, par. 6 (U. S. Comp. Stat. of 1916, par. 8569 sub. div. 7) of the Interstate and Foreign Commerce Act; or does paragraph twenty-two preserve to plaintiff the right to have this case heard in the State Court?"

United States Compiled Statutes 1916, par. 8569 sub. div. 7, provides:

"No carrier, unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, as defined in this Act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of the Act, nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges are specified in the tariff filed and in effect at the time. . . ."

United States Compiled Statutes, paragraph 8573 (Act Feb. 4, 1887, c. 104, par. 9) reads:

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for, or may bring

suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any district (or circuit) court of the United States of competent jurisdiction; but such person shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt.''   .   .   .

Section twenty-two is as follows:

''Nothing in this Act shall in anywise abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.''

In our opinion, it was necessary under the facts stated to refer the claim in the first instance to the Insterstate Commerce Commission for its action and award. An award by that body is a prerequisite to the recovery of a judgment against the defendant.

The cardinal object sought to be attained by the Act of Congress to Regulate Commerce was the establishment and maintenance of reasonable and uniform rates. To the Interstate Commerce Commission is conferred the power of administering the Act and with it rests the duty to enforce the establishment and maintenance of reasonable and uniform rates. That body has exclusive original jurisdiction in all administrative matters affecting the reasonableness and uniformity of rates. If this were not true, the very reverse of what the lawmaking body intended would result; confusion in the administration of the Act would ensue and lack of uniformity in the application of rates would follow. The case at hand furnishes a striking illustration of what would in all probability follow if the matter were not referred to the Interstate Commerce Commission, in the first instance, for its determination.

The evidence of the plaintiff tended to show that the commodity shipped was considered scrap lead; while defendant's evidence tended to show that the commodity was pig or bar lead. It must be admitted that the evidence would support a finding by the jury for either party. If, therefore, matters such as this be left to juries or courts, a jury or court in one jurisdiction would conclude that the commodity was scrap lead and in another jurisdiction, another court or jury would determine that it was pig or bar lead. This of course would bring about lack of uniformity in the rates of an identical commodity and would confer upon courts and juries, instead of the Interstate Commerce Commission, the power of administering the Act. Thus it clearly appears that as to whether the commodity is scrap lead, or pig lead is more than a question of mere identity; it is a matter of tariff classification as well, and involves an administrative matter connected with the Act to Regulate Commerce with which the Interstate Commerce Commission is primarily concerned.

By analogy, the reasoning by Mr. Chief Justice WHITE in Texas & Pacific Ry. Co. v. American Tie & Lbr. Co., *supra*, is applicable here. The commodity in that case, over which the controversy arose, was railroad ties. The railway company had a published rate on lumber and it was contended by the shipper that the ties should take the lumber rate. In support of the shipper's contention, evidence was introduced tending to show that it was generally regarded as lumber and the railway introduced evidence tending to show the reverse. The court hearing the case determined in favor of the shipper and applied the lumber rate. The Supreme Court of the United States held that such a practice would destroy the uniformity in the application of the rates and that it was, therefore, a question primarily for the Interstate Commerce Commission.

In view of the answer to Question No. 1, the answer to Question No. 2 becomes unnecessary.

### BY THE SUPREME COURT

The opinion of the Commission of Appeals answering certified question is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton, Chief Justice.*