## VIVIER v. LUMBERMEN'S INDEMNITY EXCH. et al.　(No. 419–3780.)*

(Commission of Appeals of Texas, Section A. April 25, 1923.)

**Master and servant** ☞373 — **Death of night watchman assaulted and robbed held compensable as caused by injury "in course of employment."**

Where a night watchman while on his employer's premises engaged in his duties was as-

saulted and killed by unknown persons whose motive was robbery, his death was caused by "injury in the course of employment," as defined in Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, which in terms excludes injury by an act of a third person because of reasons personal to the employee, and is intended to exclude cases involving antecedent malice or cases where the employee provokes the difficulty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

Error to Court of Civil Appeals of Nineth Supreme Judicial District.

Action by the Lumbermen's Indemnity Exchange and others against Mrs. Jules Vivier to set aside an award by the Industrial Accident Board in favor of defendant and an award of attorney's fees. Judgment sustaining the award was reversed by the Court of Civil Appeals (239 S. W. 286), and defendant brings error. Reversed as recommended by the Commission of Appeals.

R. E. Masterson, of Beaumont, and J. W. O'Neal, of Port Arthur, for plaintiff in error.
C. A. Lord, of Beaumont, for defendants in error.

RANDOLPH, J. This was an action instituted by defendant in error in the district court of Jefferson county to set aside an award by the Industrial Accident Board in favor of Mrs. Vivier, plaintiff in error, as compensation for the death of her husband, and also awarding to J. W. O'Neal a percentage thereof as attorney's fees. The trial court rendered judgment sustaining the Accident Board's award. On appeal from this judgment the Court of Civil Appeals, by a majority opinion, reversed the trial court's judgment and rendered judgment for defendant in error. 239 S. W. 286.

In granting the application for writ of error herein, the Supreme Court made this notation: "We are inclined to the opinion deceased met his death in course of employment."

On the 27th of September, 1919, Jules Vivier was in the employ of George W. Smyth Lumber Company, as night watchman, and on that night was assassinated by unknown parties. Vivier's duties were to stay at the plant all night, and to guard the property against fire and depredation. In the course of his night duties, he had, at stated intervals, to punch the watchman's clock. The last punch showed the hour to be 9:15. He was not found until morning and was discovered sitting in his chair unconscious. He had evidently been struck on the head with an iron bar. The day of his injury he had been paid his weekly wage, and on the ground near where he was sitting his pay envelope

torn open and a copy of the Saturday Evening Post were found, with the money gone from the envelope. He had 35 cents in his pocket, which was not taken, and there was nothing missing on the premises that belonged to the company. At the time he was found he was still alive, but died soon after his removal to a hospital.

The majority of the Court of Civil Appeals, in reversing and rendering the trial court's judgment, held that the undisputed evidence in the case established the fact that the injury which resulted in the death of deceased was not sustained in the course of his employment, but that he received such injury at the hands of an assassin whose motive was to rob the deceased of money on his person, and because of that fact, such injury and death were brought about by "reasons personal" to the deceased.

That portion of article 5246—82, Vernon's Civil Statutes 1918, defining "injury sustained in the course of employment" and excluding injury received by reasons personal to the party injured or killed, is as follows:

"The term 'injury sustained in the course of employment,' as used in this act, shall not include. * * *

"(2) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment."

The defendants in error contend that because the Court of Civil Appeals has found as a fact that the deceased was robbed of $19.25 and that robbery was the only motive prompting the assailant to commit the assault upon deceased, that the Supreme Court is bound by this finding of fact so determined, and cannot render any other judgment. This proposition is not sound, because the defendant in error fails to distinguish between the fact found and the conclusion of law that follows upon such finding. We accept this finding of fact by the Court of Civil Appeals, but hold that that court erred in their application of the law to the fact found.

We cannot conceive that the Legislature, in providing that no compensation should be allowed an employee's dependents when he meets death or is injured by the act of a third person, intended to injure him because of reasons personal to him, and not directed against him as an employee, intended that such provision should apply to an employee injured or killed under the circumstances of this case. As we apprehend the intention of the Legislature, it was to apply to such cases where antecedent malice existing in the mind of another causing the other to follow the employee and inflict injury upon him, wherever he was to be found, or to cases where the employee by his own initiative provoked a difficulty which caused the other party to feel a "personal" interest in assaulting him.

In the instant case the deceased was employed as a night watchman. During the long hours of the night his was the duty of protecting his employer's property from fire and depredation. If there was no risk, why the employment? To say that there was no additional risk attached to this duty which was not brought about by the employment is to pronounce as a piece of foolishness such employment of him as a night watchman. By reason of the performance of his duty, deceased was placed in a position which contributed to the effectuation of the designs of the assassin, and furnished the opportunity for injury or death that would not have existed but by reason of his situation in the performance of his duty.

In the case of Lumberman's Reciprocal Association v. Behnken (Tex. Sup.) 246 S. W. 72, Justice Greenwood lays down the general rule that—

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

"'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 918."

Applying this rule to the facts of the case at bar, we hold that the deceased, in the performance of his duties as night watchman, and in the course of his employment, was placed in a position where his environment contributed to his risk and that the fact that he was killed in the discharge of his duties evidenced the further fact that he would not have been killed but for his presence at the plant in the performance of such duties.

We quote from the following cases in support of this holding:

The rule laid down in the case of Heidemann v. American District Telegraph Co., 230 N. Y. 306, 130 N. E. 303, in the case of a night watchman killed by the police, that his death did arise out of the employment within the meaning of the statute, is one that clearly illustrates our conception of the intention of the Legislature in enacting our statute, and we quote as follows:

"In September, 1919, Carl V. Heidemann was employed as a night watchman by the American District Telegraph Company, which was engaged in the business of furnishing its subscribers with protection against burglary. His duty was to patrol the streets in a given section of Brooklyn, try the doors, and keep watch and ward until relieved. About 3 o'clock in the morning of September 22, 1919, in the course of his regular work, he was accidentally shot by a police officer then in the pursuit

of burglars. The first shot was fired in the air; the second hit Heidemann and killed him. An award under the Workmen's Compensation Law, in favor of his widow, was reversed at the Appellate Division on the ground that death, though occurring 'in the course of employment,' did not arise 'out of' employment within the meaning of the statute.

"We reach a different conclusion. Heidemann's duties involved exposure to something more than the ordinary perils of the street. with its collisions, its pitfalls, and the like. Matter of Redner v. Faber & Son, 223 N. Y. 379, 119 N. E. 842; Dennis v. White & Co., (1917) A. C. 479. For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless. Other men, if the ill fortune was theirs to be close to an affray, might, indeed, encounter a like fate. Dennis v. White & Co., supra, at pages 489, 492; Thom v. Sinclair, (1917) A. C. 127, 143; Bird v. Keep, 11 B. W. C. C. 133; Allcock v. Rogers, Id. 149, 153. His calling multiplied the chance that he would be near when trouble came, and in multiplying the chance increased exposure to the risk. 'He was brought by the conditions of his work "within the zone of special danger."' Matter of Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 472, 128 N. E. 711.

"We are told that the death was unrelated to the employment, because the burglars had not entered a building which the employer was protecting. The incidents of service may not be limited so narrowly. It was not only in repelling attack upon the property of his employer's patrons that Heidemann had to face the perils of his calling. He faced them at all times while abroad upon his duties. His employment put him upon the street at night, and put him there in search of trouble. If shots were heard, or cries of distress, or the sounds of an affray, others might run to shelter. His duty was to search the cause. The disturbance might have its origin in the homes and stores and offices intrusted to his care. He could not know unless he looked. Crimes of violence flourish under cover of the night and darkness. That was the very reason why Heidemann was there to guard.

"The sudden brawl, the 'chance medley' (Blackstone, Comm. book 4, c. 14; People v. Tomlins, 213 N. Y. 240, 244, 107 N. E. 496, Ann. Cas. 1916C, 916), are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler; hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek, where others were free to shun. The difference is no less real, because a difference of degree. The tourist on his first voyage may go down with the ship, if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home. The night, too, has its own hazards, for watchman and for wayfarer. Death came to Heidemann in the performance of his duty, face to face with a peril to which the summons of that duty called him."

In the case of Rosmuth v. American Radiator Co., 201 App. Div. 209, 193 N. Y. Supp. 771, a great many cases have been cited in support of the decision. As the discussion of the questions in that case is germane to the principles involved in this, we copy as follows from the opinion:

"The question is: Did the employment as such proximately contribute to a risk which is common to humanity? If so, there is liability. The weight of recent authority is in favor of this broad interpretation of the statute, which considers the employment as including its conditions, obligations, and incidents, and considers the perils reasonably to be expected therefrom as risks arising out of the employment. It has found expression in the case of Heidemann v. American District Telegraph Co., 230 N. Y. 305, 130 N. E. 302, where a night watchman was on duty, and was shot accidentally on the street in the early morning by policemen who were in pursuit of burglars; in Katz v. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, where the claimant was a chauffeur, driving a car in New York City, and as he halted on account of a crowd in front of him he was stabbed by an insane man; in Verschleiser v. Joseph Stern & Son, 229 N. C. 192, 128 N. E. 126, where the claimant, who had been teased and insulted by fellow employees, resented the insult by kicking another employee, and was thereupon injured by that employee; in Knocks v. Metal Packing Corporation, 231 N. Y. 78, 131 N. E. 741, where claimant had called his foreman a liar because the latter told him he was putting too much oil upon the machinery, whereupon the foreman struck him, causing injury; in Spang v. Broadway Brewing & Malting Co., 182 App. Div. 443, 169 N. Y. Supp. 574, where a collector for a brewery, while in the performance of his duties, was killed and robbed, the purpose being to secure the money which he had on his person belonging to his employer; in Slane v. Cording & Salzmann, 179 App. Div. 952, 165 N. Y. Supp. 1112, where an employee was assaulted and killed by a fellow employee. who had stayed away from work, and the employee assaulted, to whom the other was subordinate, had informed upon him, resulting in the employer docking the assailant's pay. See, also, the English cases of Board of Management of Trim Joint District School v. Kelly, (1914) App. Cas. 667; Nisbet v. Rayne & Burn (1910) 2 K. B. 689; Dennis v. White & Co., (1917) App. Cas. 479.

"Under this broader conception of employment and its incidents, 'the test * * * is the relation of * * * the employment to the risk.' Leonbruno Case, supra, 229 N. Y. 473, 128 N. E. 712, 13 A. L. R. 522. The fact that the risk may be common to all mankind does not disentitle a workman to compensation, if in the particular case the risk is accentuated by the incidents of the employment. The question is whether there was a special exposure to the peril. Heidemann v. American District Telegraph Co. Case, supra, 230 N. Y. 307, 130 N. E. 302. In that case the court called attention to the well-known fact that 'crimes of violence flourish under cover of the night and darkness.' The fact that the duties of Rosmuth called him to a lonely spot, 200 feet

away from the plant, after midnight, immediately following pay night, which was a matter of common knowledge in the community, furnishes sufficient evidence that the object of the assault was robbery, and that 'he was brought by the conditions of his work "within the zone of special danger." ' Leonbruno Case, supra, 229 N. Y. 472, 128 N. E. 711, 13 A. L. R. 522.

"I believe that the incident of the employment of Rosmuth which brought him to the spot where the assault and robbery were more successfully accomplished, and thus in a real sense invited, increased his exposure to a risk otherwise common to humanity. Since the employment directly contributed to the risk by added exposure to a common peril, the accident may be said to have arisen out of his employment."

Entertaining these views, we recommend to the Supreme Court that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.