# MARCH, 1950

## AMERICAN GENERAL INSURANCE COMPANY V. PATSY WILLIAMS.

No. A-2408. Decided February 15, 1950.
Rehearing overruled March 29, 1950.
(227 S. W., 2d Series, 788.)

**2**

*Cecil, Keith & Mehaffy* and *Quentin Keith,* all of Beaumont, for petitioner.

The Court of Civil Appeals erred in refusing to sustain petitioner's point of error that the trial court erred in overruling its motion for peremptory instruction at the close of the testimony, because the evidence conclusively established that the deceased was not in the course of his employment at the time he received his alleged injuries. Hartford Acc. & Indm. Co. v. Cardillo, 112 Fed. 2d 11; Southern Surety Co. v. Shook, 44 S. W. 2d 425; Cassell v. U. S. Fid. & Guar. Co., 115 Texas 371, 283 S. W. 127.

*Fisher & Tonahill,* and *Joe H. Tonahill,* all of Jasper, and *Looney, Clark & Morehead* and *R. Dean Morehead,* all of Austin, for respondent.

The Court of Civil Appeals correctly refused petitioner's request for a peremptory instruction, and, indeed, since the evidence conclusively established as a matter of law that the injury occurred in the course of employment of the deceased, that Court would have been justified in granting a peremptory instruction for respondent. U. S. Casualty Co. v. Hampton, 293 S. W. 260; Texas Emp. Ins. Assn. v. Owen, 298 S. W. 542; Texas Em. Ins. Assn. v. Pugh, 57 S. W. 2d 248.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This is a workmen's compensation suit. Patsy Williams was plaintiff in the trial court and appellee in the Court of Civil Appeals, where the trial court's award to her of $6416.77, was upheld. 222 S. W. 2d 907.

She alleged that her husband, Clarence Williams, came to his death in the course of his employment with Trotti & Thompson, Inc., and that his injuries were such as had to do with and arose out of the work or business of his employer and was inherent in or incident to the conduct of such work or business.

The jury found that the injuries received by the employee (which resulted in his death) were sustained in the course of his employment but did not have to do with or originate in the work, business or trade of the employer. The jury found also in response to special issues submitted by the court's charge (1), that Bennie did not strike Clarence because of matters connected with Clarence's employment and (2), that Bennie struck Clarence because of matters personal between them.

The cause is before us on the application for writ of error of the insurer, American General Insurance Company, granted on the first and fifth points alleging error on the part of the trial court,—

(1) In overruling defendant's motion for peremptory instructions at the close of plaintiff's testimony, setting up that the evidence conclusively established that the deceased was not in the course of his employment at the time he sustained his injuries; and (2) in granting plaintiff's motion to disregard certain findings of the jury for the reason that the disregarded findings were supported by the testimony.

The trial court in his charge to the jury gave the following definition of the term "employee" as used in the Workmen's Compensation Act:

"By the term 'employee' as used herein is meant every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer."

The Court, after defining the term "injury" as used in the act and after eliminating the four exceptions to coverage from the clause of the act, "injury sustained in the course of employment," set out in subheadings 1, 2, 3 and 4 of Section 1 of Article 8309, V. R. C. S., 1948, further charged the jury as follows:

"But said quoted clause shall include all other injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the futherance

of the affairs or business of his employer, whether upon such employer's premises or elsewhere."

The two findings of the jury stated above were made along with others which are evidentiary in their nature but in no way in conflict therewith. The two findings considered together, disclose that they are lacking in the vital particular necessary to constitute compensability, namely, that the injuries must have their origin in the work or business of the employer.

■ Since compensability of the claim is negatived by the undisputed facts presently to be stated, it is not necessary to discuss the findings of the jury with respect to the origin of the injuries sustained by the deceased, Clarence Williams. The following are the essential and undisputed facts: On the morning the deceased sustained his fatal injuries he was one of the employees of Trotti & Thompson, Inc. The business of this corporation was road construction. The nature of Clarence Williams' work for his employer was to keep the concrete used in the construction which it then had under way, wetted down. He, on the morning of October 23, 1947, with other employees, had been brought to the employer's premises in one of its trucks in accordance with its plan of having the employees on hand ready to go to work when needed. On the above date before there was any need for Clarence's work he, with other employees of Trotti & Thompson, Inc., including Bennie Thornton, likewise not then at work, were taking part in a game of dice, or craps, which was in progress on their employer's premises near its main office. Clarence and Bennie had made a side-bet on the outcome of the throwing of the dice, the details of which are not important further than to say that when trouble arose out of the betting transaction Bennie struck Clarence on the forehead with a 2x6 and that he died either as a direct result of the blow, or from striking the back of his head on an elevated piece of concrete lying near the dice table from which he fell when struck. The wage Clarence was under contract to be paid for his work of wetting down concrete was a specified amount per hour while so engaged. On the date referred to he was on the employer's premises, brought there by it so he would be on hand to take up his work as soon as the need therefor arose. The same is true of Bennie. They were merely on the employer's premises and the work of neither had begun at the time Bennie struck Clarence the blow from which his injuries and death ensued. The employer, Trotti & Thompson, Inc., was cognizant that its employees were engaging with frequency in this game of chance on its premises in violation of the penal code of this state; but this knowledge on the part of the em-

ployer and the fact that some of its supervisory employees participating in the game, together with the further fact that it did nothing to terminate the practice (however remise it may or may not have been in failing to do so) is the extent to which the employer is shown to have been involved. The foregoing undisputed facts negative liability on the part of the employer and oviate any necessity of discussing the jury findings.

The Court of Civil Appeals cites in support of its holding of compensability of the claim under the terms and provisions of the Workmen's Compensation Act, the cases of Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D. C. 52, 112 Fed. 2d 11; Cassell v. U. S. F. & G. Co., 115 Texas 371, 283 S. W. 127, 46 A. L. R. 1137, and Southern Surety Co. v. Shook (wr. ref.), 44 S. W. 2d 426. These cases are not in point. Both employees, Clarence Williams and Bennie Thornton, were on their own so to speak, so far as their participating in the crap-shooting game is concerned.

■ Under the provisions of the workmen's compensation law of this state as interpreted, (and liberally interpreted, as it should be to carry out the legislative plan of compensating injured workmen and their dependents) by the decisions applying the applicable principles of the law to its terms and provisions, the claim of Patsy Williams is not within its purview. Safety Casualty Co. v. Wright, 138 Texas 492, 160 S. W. 2d 238; Aetna Life Ins. Co. v. Burnett (Com. App.), 283 S. W. 783; Smith v. Texas Employers' Ins. Ass'n. (Com. App.), 129 Texas 573, 105 S. W. 2d 192; Texas Employers' Ins. Ass'n. v. Bailey, 266 S. W. 192, writ refused; McKim v. Commercial Standard Ins. Co., 179 S. W. 2d 357; Graves et al v. Texas Employers' Ins. Ass'n., 127 S. W. 2d 596.

In the case first cited this Court says:

"An injury arises out of employment, within the meaning of Article 8309, Subdivision 4, supra, when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. In this connection, it may be said that a risk is incidental to employment when it belongs to or is connected with what a workman has to do with performing his contract of service. * * * Stated in another way, 'an injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business.' " citing Lumbermen's Reciprocal Ass'n. v. Behnken, 112 Texas 102, 246 S. W. 2d 72, 73, 28 A. L. R. 1402.

■ In Aetna Life Ins. Co. v. Burnett, supra, p. 784, the Court says:

"In order that an employee may recover under the provisions of this law, proof that his injury occurred while he was engaged in or about the furtherance of the employer's affairs or business is not alone sufficient. * * - The injury caused by his attempt to remove the gun did not result from a risk or hazard incident to the busienss of selling baking powders. This injury had nothing to do with and did not originate in his employer's business, and hence is not such injury as is contemplated by the statute."

The following statement in Texas Employers, etc. v. Bailey, supra, in which this Court refused an application for writ of error, has pertinent application here:

"* * * The causative danger of permitting Gray with a loaded gun to occupy a seat on the laundry wagon was not incidental to the laundry business, but wholly independent of any relation between Bailey and the laundry company."

The activities of the respective employees in the cases relied upon by the Court of Civil Appeals were not viewed as the activities of Clarence Williams and Bennie Thornton are sought to be viewed here by respondent, that is, as having arisen out of a practice instituted by the employer as an aid to carrying on its business. For this reason the cases relied upon are not in point.

Therefore, in the view we take of the case, we do not find it necessary, *in the absence of any showing that Trotti & Thompson, Inc. was connected with the unlawful practice in which Clarence Williams and Bennie Thornton were participating,* to decide any other question presented by the record. Had the employer been shown to have originated the practice of shooting dice on its premises or adopted it as any part of its work plan, or made it a part of either the work or recreation of its employees to serve its purpose in any way, *a different question would be presented which we do not find it necessary to decide under the present facts.*

Nor is it necessary to write further at length here concerning our reasons for adhering to our tentative conclusion of non-liability of the insurer than to say that *to hold to the contrary would extend the coverage of the workmen's compensation act beyond its present limits by exercising a legislative, rather than judicial, function.*

Nor is it necessary to discuss respondent's contention predicated on what is designated as "the evolution of decisions" in workmen's compensation cases under the heading of "recreation" customary in employment as pointed out in the Shook case, supra. Writ of error was refused in that case and its holding with respect to the recreation and necessities of employees is firmly established and is not called in question by any holding made herein.

Inasmuch as there is nothing in the side-bet made by Clarence and Bennie in the crap-game connected with the employer's business of highway construction, the claim is non-compensable and the insurer is not liable. The judgments of the courts below are therefore reversed and set aside and, *inasmuch as the alleged cause of action appears to have been fully developed,* judgment is here rendered in favor of petitioner.

Opinion delivered February 15, 1950.

Rehearing overruled March 29, 1950.