Willie Elton WEST, Appellant,

v.

The **HOME INDEMNITY COMPANY**,
Appellee.

No. 7074.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Jack E. A. White, Corpus Christi, for
appellant.

Guy Allison, Corpus Christi, for appellee.

PARKER, Chief Justice.

Appellant, West, appeals from a judgment denying him a recovery under the Workmen's Compensation Act for injuries when he was shot by a robber of a filling station a block or more away from premises which he was employed to guard as a night watchman. The judgment was based upon a finding by the jury that West was not in the course of his employment at the time he was shot. The definition of "course of employment" contained the statutory language included in subsection (2) of Article 8309, § 1, V.A.C.S., defining course of employment, viz:

"The term 'injury sustained in the course of employment,' as used in this Act, shall not include:

\*   \*   ·   \*   \*   \*   \*

"(2) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment."

West appeals upon three points of error: (1) the inclusion of the quoted language from the statute in the charge was error because there was no evidence to support such inclusion; (2) there was insufficient evidence to support the inclusion of such language; and (3) the inclusion of the quoted language "constituted an unwarranted comment on the evidence and was prejudicial." All of the points are briefed together by both parties and will be considered as presented.

■ By its fifth reply point, appellee contends that West's points for reversal are not entitled to consideration because the objections to the charge were "not brought to the attention of the trial court." We turn first to a consideration of this matter and find that the case went to trial on September 11, 1968, the charge was filed on September 13th, and the verdict was received upon the same date. The objections to the charge, upon which West's points must rest were dictated to the court reporter by his counsel; and, included in the first paragraph, was the statement they were being so dictated "with the stipulation that the objections to the charge may be reduced to writing at a later date and made a part of the pleadings and the papers in this cause." At the conclusion of the objections, we find this language: "The Court: That concludes your objections? Objections noted and overruled." This instrument was transcribed by the court reporter on January 23, 1969, and filed among the papers on January 30, 1969, and bears the approval of counsel for *both* parties. Rule 272, Texas Rules of Civil Procedure. It was filed in time to be included in the transcript.

The purpose of Rule 274, T.R.C.P., requiring a party to point out distinctly the matter to which he objects is to give the trial court the opportunity to correct any errors in the charge so that the case may be properly submitted. Missouri Pacific Railroad Co. v. Kimbrell, 160 Tex. 542, 334 S.W.2d 283, 285 (1960). The objections were dictated in the presence of the court and opposing counsel, were considered by the court and overruled. The mere fact that the court did not wait for the court reporter to type up the objections before proceeding with the case is immaterial. Appellee's contention that the objections were not made timely is overruled.

■ By its fourth reply point, appellee objects to a consideration of West's third point of error, complaining that the definition amounted to an unwarranted comment upon the evidence. We have reviewed the objections to the charge and the amended motion for new trial. The objections to the charge, in extremely general language, contended that the inclusion of the statutory language quoted previously would be "prejudicial to the Plaintiff." The amended motion for new trial makes no reference to the language being in the nature of a comment upon the weight of the evidence.

Appellee's position with reference to the third point is well taken. Rule 274, T.R.C. P., requires that "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." West did not, in the objection, even hint at a complaint based upon a comment upon the evidence. The objection was insufficient to preserve the alleged error. Hicks v. Fredericks, 286 S.W. 2d 315, 317 (Beaumont, Tex.Civ.App., 1955, no writ); Safeway Stores Incorporated v. Bozeman, 394 S.W.2d 532, 539 (Tyler, Tex. Civ.App., 1965, error ref. n. r. e.).

■ Furthermore, under Rule 320, T.R. C.P., " * * * no ground not specified [in the motion for new trial] shall be considered." J. Weingarten, Inc. v. Tyra, 381 S.W.2d 215, 219 (Tyler, Tex.Civ.App., 1964, no writ), and cases therein cited. Consequently, West's third point is not properly before us and will not be considered further.

We return now to the two points entitled to be considered; and, in considering the "no evidence" point, we will look only to the evidence which supports the finding of the jury, while, as to the point complaining of the insufficiency thereof, we look to the entire record.

■ All of the testimony as to how West received the injuries came from him. He was hired as a night watchman by Lay Construction Company to guard its properties, situated on two square blocks of land in Corpus Christi, with instructions to patrol the area either in his own automobile or by walking. At about 11:45 p. m., on the night in question, he had walked around the employer's premises and discovered that he had only three cigarettes left. He then went to a Sigmor filling station about a city block from the nearest point to his employer's premises to procure cigarettes and a bottle of soda water which he says he intended to drink along with his lunch. He knew the filling station customarily closed at midnight and got there just as the attendant was in the process of closing up.

Almost simultaneously with West's arrival at the station and before he made either of his purchases, a bandit suddenly appeared in the doorway of the station saying " 'Stick 'em up,' or whatever he said. 'This is a holdup.' " (All quotations are from West's testimony.) West then "took time to look" at the bandit. The bandit then ordered West and the filling station attendant to go into the restroom. Thereupon, the bandit "yelled at that operator to give him everything he had, that he wanted that money, 'Get down on your knees,' that he was going to shoot. As I say, I mean, I got down."

West was armed at the time, his gun being in his belt underneath a buttoned leather jacket, and not visible to the bandit. He reached for his pistol and the bandit shot him, causing severe wounds and the incapacity for which he sued in this case.

Upon cross-examination, West was frank to admit that he was not at the filling station in the performance of any duties for his employer, saying: "I was going to get a package of cigarettes and a drink and go right back to the area that I belonged."

Being asked the legal conclusion, " * * the reason you went there was a purely personal reason, was it not?", West answered, "I assume, yes." Being pressed as to his reason for being in the filling station, West said that "I had no business there except as a customer." He readily admitted that it was no part of his job with Lay Construction Company to patrol the area of the filling station or to protect the property of Sigmor.

It clearly appears from West's testimony that upon orders from the robber, he went into the restroom with the station attendant with his hands raised but was waiting for a "break" when he could draw his own gun and shoot the robber. He said "he [the robber] started shooting when I resisted," by which he explained that "when I dropped my hands, he started shooting both of us."

He was asked this question: "And, it [the shooting] was not directed at you as

an employee of Mr. Lay?", to which he answered: "No, I don't suppose the man ever seen me before." The cross-examination continued:

"Q. Just a man who had decided on the spur of the moment, *because you dropped your hands,* that he was going to shoot?

"A. That's right * * *." (Emphasis ours.)

West, whatever his commendable motives were in drawing his gun, was not injured because of any risk to which he was exposed by reason of his employment by Lay.

Although West cites Vivier v. Lumbermen's Ind. Exchange, 250 S.W. 417 (Tex. Com.App., 1923) in support of his position, we do not read that case as supporting a recovery here. There, Vivier was killed by a robber while he was actually upon the employer's premises, the crux of the decision being found in this quotation:

"Applying this rule to the facts of the case at bar, we hold that the deceased, in the performance of his duties as night watchman, and in the course of his employment, was placed in a position where his environment contributed to his risk and that the fact that he was killed in the discharge of his duties evidenced the further fact that he would not have been killed but for his presence at the plant in the performance of such duties." (250 S.W. at p. 418).

█ Had West been on the Lay premises, there is no reason to suppose that he would have been subjected to the robbery. He was not on the premises, but away from his post of duty. West's presence in the filling station when injured was, as he says, "purely personal" and the appellee invokes the rule repeated in American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370, 374 (1957) holding that injuries received while going to or returning from the place of employment are not compensable. Citing Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 194 (1937), the appellee correctly points out that even in the class of cases known as "street risks",

"* * * the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."

West meets none of these tests, even under the "street risk" theory.

█ West did not show that his injury was received in the course of his employment. American Gen. Ins. Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788 (1950); McKim v. Commercial Standard Ins. Co., 179 S.W.2d 357 (Dallas, Tex.Civ.App., 1944, error ref.). There was ample, if not overwhelming, evidence requiring the court to include the statutory exclusion in the definition of course of employment. West's points are both overruled and the judgment of the trial court is

Affirmed.