United States Court of Appeals,

Fifth Circuit.

No. 93-1322.

Sue PANSEGRAU, Plaintiff-Appellee Cross-Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Defendant-Appellant Cross-Appellee.

June 29, 1994.

Appeals from the United States District Court for the Northern
District of Texas.

Before GOLDBERG, DAVIS, and DeMOSS, Circuit Judges.

GOLDBERG, Circuit Judge:

In this Texas workers' compensation appeal, National Union
Fire Insurance Company ("National Union") seeks to have a judgment
in favor of plaintiff Sue Pansegrau ("Pansegrau") reversed on
various grounds. Pansegrau, for her part, cross-appeals the
decision of the district court to reduce the amount of her
judgment. Our interpretation of Texas workers' compensation law
reveals no basis for reversing the judgment in Pansegrau's favor.
It does, however, show that the district court's decision to reduce
Pansegrau's benefits was erroneous and should be reversed.

I. FACTS

In the early morning hours of March 8, 1990, Pansegrau, a
registered nurse, was on duty at St. Paul Hospital in Dallas,
Texas. While speaking with a co-worker, Pansegrau, without warning
and without discoverable cause, suddenly lost consciousness and
fell to the ground. She took no action to break her fall and the

1

left side of her head hit the hard tile floor.  The impact of her fall caused a basal skull fracture and a brain stem injury.

Pansegrau filed a claim for workers' compensation benefits. After the Workers' Compensation Commission awarded her compensation, the workers' compensation carrier, National Union, appealed by filing the instant lawsuit in the federal district court below.  The court held separate trials on liability and damages.  After a trial on the question of National Union's liability, the jury returned a verdict in favor of Pansegrau.  The jury found that Pansegrau's injury was sustained in the course of her employment and that she was therefore entitled to compensation.

By consent of the parties, the question of damages was referred to a magistrate.  The district court adopted the magistrate's findings that Pansegrau was only entitled to recover $73,369.78 in damages.  Although she had in fact incurred an additional $281,706.78 in fair and reasonable medical expenses, the court reasoned that she could only recover a part of her total medical expenses because the other expenses had either been paid by Pansegrau's health insurance carrier or were written off by the health care providers as a professional courtesy to her husband who is himself a doctor.  The magistrate concluded:  "Since plaintiff has never been charged for any expenses associated with services rendered ... she is not entitled to recover damages for such medical expenses."

On appeal, National Union disputes the finding of liability and argues that Pansegrau has failed to show her injury occurred

"in the course of employment" so as to entitle her to workers' compensation benefits under Texas law. National Union also alleges sundry other legal errors by the district court. Pansegrau, on cross-appeal, claims that she is entitled to recover the additional past medical expenses.

## II. ANALYSIS

A. National Union's Allegations of Error

National Union contends that the district court erroneously interpreted the requirements for a valid workers' compensation claim. Initially, National Union alleges that there was not sufficient evidence to support the jury's findings. The disputed findings include that Pansegrau's injury was sustained "in the course of employment" and that Pansegrau did not make an election of remedies when she pursued and accepted benefits from her employer's group health insurance carrier. Further, National Union alleges that the district court erroneously refused to give a jury instruction explaining the "in the course of employment" phrase and erred in awarding lifetime benefits to Pansegrau as a matter of law. As we show below, National Union's contentions do not justify reversal of the trial court.[1]

1. Idiopathic Falls

An injured employee in Texas may recover workers' compensation benefits if the injury was sustained "in the course of employment."

---

[1]National Union also argues that the district court made additional procedural mistakes in conducting the trial. Having reviewed the record and the merits of these contentions, we find no reason to reverse the trial court's decision based on these points of error.

Tex.Rev.Civ.Stat.Ann. art. 8309, § 1(4), (Vernon 1967) (repealed 1991).[2] The statute defines "injury sustained in the course of employment," to include:

> injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer.

*Id.* Texas courts have culled two essential requirements out of this statutory definition: the injury (1) must have occurred while the claimant was engaged in the business of his or her employer; and (2) must originate in and have to do with the employer's business. *Texas Employers Insurance Association v. Page,* 553 S.W.2d 98, 99 (Tex.1977).

National Union concedes that Pansegrau meets the first requirement; she was on duty and engaged in her employer's business at the time she suffered her injuries. The controversy in this case concerns the interpretation of the requirement that "the injury originated in the employer's work, trade, business or profession." *Id.* National Union argues that Pansegrau's injury did not originate in the hospital's business or in her profession as a nurse. The evidence shows that she was standing up and talking when she lost consciousness, fell down, and hit her head on the floor. The doctors who testified to Pansegrau's injuries could not identify a particular reason for the original loss of

---

[2]The statute in effect at the time of Pansegrau's injury in 1990 was the old workers' compensation law, Tex.Rev.Civ.Stat.Ann. art. 8306, *et seq.* (Vernon 1967) (repealed 1991, now Art. 8308-1.01, *et seq.* (Vernon Supp.1992)). Although it has no effect on this case, the definition of this term was reworded in the new statute but was not substantively changed.

consciousness. They did testify, however, that her current disabilities are a direct result of her head hitting the hard tile floor.

National Union argues that Texas requires a causal connection between the employee's work conditions and the injury. The injury, it asserts, must result "from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business." *American General Ins. Co. v. Williams,* 149 Tex. 1, 227 S.W.2d 788, 790 (1950); *see also City of Garland v. Vasquez,* 734 S.W.2d 92, 96 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Because there was no evidence linking Pansegrau's loss of consciousness to any particular risk or condition inherent to her position as a nurse at St. Paul Hospital, National Union claims that Pansegrau's injuries did not arise out of her employment.

Based upon the causal connection requirement, National Union contends that the district court made two separate errors in the conduct of the trial below. First, it argues that there was insufficient evidence to support the jury's finding that Pansegrau's injury occurred in the course of her employment. Next, National Union contends that the trial court should have issued a jury instruction which embodied National Union's interpretation of the causal connection requirement. We conclude that National Union's interpretation of the causality requirement is jurisprudentially incorrect and therefore find no merit to its allegations of error.

The case law interpreting and implementing the Texas worker's

compensation statute has provided compensation to employees who fall on the job for unknown reasons and are injured as a result. *See Garcia v. Texas Indemnity Ins. Co.,* 146 Tex. 413, 209 S.W.2d 333, 336 (1948) (granting workers' compensation benefits following an idiopathic fall[3]); *Page,* 553 S.W.2d at 102 (same).[4] This line of cases extends the principle that a "pre-disposing bodily infirmity will not preclude compensation." *INA of Texas v. Howeth,* 755 S.W.2d 534, 536 (Tex.App.—Houston [1st Dist.] 1988, no writ). In idiopathic fall cases, although the condition which caused the fall is unknown, if the worker was injured by the fall itself, he or she can claim compensation for injuries sustained as a result.

Our decision in this case follows a series of Texas decisions in which the employee was allowed to collect for injuries that occurred after an unexplained fall. The principle found its earliest incarnation in *Garcia* where the Texas Supreme Court allowed an injured employee to recover workers' compensation benefits after he suffered what the court assumed was an epileptic attack and fell and hit his head on a steel post. 209 S.W.2d at 336. The court held that even if the fall was precipitated by some underlying idiopathic condition and even if "[t]he risk may be no different in degree or kind than those to which he may be exposed

---

[3]An idiopathic fall is one for which there is no known cause.

[4]This result is consistent with the intention of Texas courts to liberally construe the workers' compensation statute in favor of employees. *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.,* 701 S.W.2d 243, 245 (Tex.1985); *Montgomery County v. Grounds,* 862 S.W.2d 35, 43 (Tex.App.—Beaumont 1993, writ denied).

outside of his employment[, t]he injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." *Id.* at 337. While it seemed the court considered the presence of a steel post as a key factor in this case, later decisions interpreting *Garcia* have not emphasized this element in their analysis of idiopathic falls.

Following *Garcia,* a Texas court of appeals allowed recovery when an employee's idiopathic condition caused him to lose consciousness and fall to the floor where he received a fatal head injury. *General Ins. Corp. v. Wickersham,* 235 S.W.2d 215, 219 (Tex.Civ.App.—1950, writ ref'd n.r.e.). The *Wickersham* court held that "[w]e can find no sound reason for denying a recovery where the fall is to the floor, when recovery is allowed where the fall is from a ladder, or platform or similar place." *Id.; see also American General Ins. Co. v. Barrett,* 300 S.W.2d 358, 363 (Tex.Civ.App.1957, writ ref'd n.r.e.) (idiopathic fall case holding that a "hard-surfaced road was an instrumentality essential to the work of the employer and falling against it was a hazard to which Barrett was exposed because of his employment").

In *Page* the Texas Supreme Court faced a situation where a bank guard walking across a level parking lot fell when his right knee buckled. The court made clear that where an employee falls to the ground due to some unidentified cause, there remains a question of fact as to "whether the injury originated out of Page's employment, that is whether there was a sufficient causal

7

connection between the conditions under which his work was required to be performed and his resulting injury." *Page,* 553 S.W.2d at 102. The crux of this holding is that where an employee has an idiopathic condition which precipitates a fall onto level ground, the employee can still assert a causal connection between the injury and a condition of employment despite the fact that no one has been able to identify the cause of the fall. For this reason, in an idiopathic fall case such as this, summary judgment (or directed verdict) against the employee on this basis is inappropriate. *Id.*

A fair reading of the case law compels the conclusion that as long as the employee traces the cause of her injuries to the fall itself rather than the underlying condition, the injuries are compensable. Pansegrau demonstrated that an idiopathic condition caused her to fall while on the job. She showed that her injuries were a result of that fall and not the underlying condition which triggered the fall. She has therefore provided sufficient evidence for a jury to find that the injuries arose out of her employment. In sum, the case law supports Pansegrau's theory of recovery and demonstrates no reasonable basis for reversing the judgment in her favor.

2. Election of Remedies

An injured employee's application for health insurance benefits may, under a limited set of circumstances, constitute an election of remedies that will relieve the worker's compensation carrier from liability. The doctrine applies to bar a claimant

8

from seeking relief when the employee:

> (1) ... successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice.

*Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 851 (Tex.1980). National Union alleges that Pansegrau made an election of remedies and the jury's finding to the contrary was unsupported by the evidence.[5]

The record in this case shows that Pansegrau by way of her husband, Dr. Don Pansegrau, initially sought coverage for her injury through workers' compensation. National Union denied the claim on April 9, 1990 as non-work related. Faced with mounting medical bills, Pansegrau's husband filed claims with her employer's group health insurance carrier. The health insurance carrier eventually paid out more than $250,000 in claims to reimburse Pansegrau's medical expenses. National Union asserts that by accepting health insurance benefits, Pansegrau made an informed decision to forgo any claim to workers' compensation.

The case law, however, shows that Pansegrau's claim is not barred by the election of remedies defense. National Union cannot prove the required elements of this defense. Texas courts following *Bocanegra* have held that "there is no election, that is, no inconsistency in choices, when one first pursues a right or

---

[5]National Union also argues that Pansegrau ratified an election made by her health insurance carrier because she accepted the payments by that carrier for her medical expenses. Because, as shown below, the election of remedies argument fails, the ratification defense similarly cannot carry any force. There can be no ratification of an election if there has been no election.

remedy which proves unfounded and then pursues the one that is allowed." *Plate & Platter, Inc. v. Wolf,* 780 S.W.2d 453, 456 (Tex.App.—Dallas 1989, writ denied). Pansegrau opted to receive payments from her employer's health insurance to cover her medical expenses only after she was denied workers' compensation benefits by National Union. She could not, therefore, have made an informed decision to relinquish her rights to pursue the workers' compensation benefits because those benefits were not an option at the time she elected to receive payment from the group health carrier. *See Allstate Ins. Co. v. Perez,* 783 S.W.2d 779, 781 (Tex.App.—Corpus Christi 1990, no writ) (election of remedies unavailable as a defense where cause of injury was uncertain and where workers' compensation carrier denied liability); *see also* 75 Tex.Jur.3d *Work Injury Compensation* § 358 (1991) ("Where a workman's employer carried, in addition to workers' compensation coverage, a group insurance policy with another company for the benefit of its employees, which excluded incapacity resulting from an injury compensable under the workers' compensation laws, and the workman claimed and received benefits under the group policy, neither the doctrine of election of remedies nor that of estoppel was applicable to bar the workman's claim for compensation against the workers' compensation insurance carrier.").

Moreover, National Union has not shown that Pansegrau "took those actions knowing the effect, that is that [she] weighed the advantages of choosing health insurance over workers' compensation, and then chose health insurance benefits." *United States Fire Ins.*

10

*Co. v. Pettyjohn,* 816 S.W.2d 839, 842 (Tex.App.—Fort Worth 1991). Pansegrau's decision was not informed, nor, for that matter, was it even a decision. The jury's finding that there was no election of remedies was therefore supported by substantial evidence.

3. Permanent Injury

National Union additionally challenges the jury's award of lifetime benefits to Pansegrau alleging that the finding of total and permanent loss of the use of her right leg and right arm do not support such an award. According to National Union, article 8306 § 10(b)[6] of the Texas workers' compensation statute permits compensation for a permanent injury only if the injury is listed in section 11a of that article.[7] Compensation is otherwise given

---

[6]Section 10(b) provides:

> If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury. For the purpose of this section only, the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member.

[7]Section 11a provides:

> Injuries constituting total and permanent incapacity. In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:

> (2) The loss of both feet at or above the ankle.

> (3) The loss of both hands at or above the wrist.

> (4) A similar loss of one hand and one foot.

11

under the general scheme, which limits medical payments to 401 weeks.

National Union claims that the jury finding that Pansegrau suffered the total loss of use of her right leg and right arm was insufficient to justify an award under the specific language of section 11a of the statute. That language specifies that an employee's injuries are to be considered conclusively permanent and total where the worker loses a foot "at or above the ankle" and a hand "at or above the wrist". Because the jury only found that Pansegrau suffered the loss of use of her right *leg* and right *arm* instead of her foot and hand, National Union maintains that the court improperly determined that she had a permanent and total injury under Section 11a justifying the payment of lifetime benefits under Section 10(b).

Texas courts addressing this specific issue have refused to construe the statute in the manner requested by National Union. In *Texas General Indemnity Co. v. Martin,* 836 S.W.2d 636, 638 (Tex.App.—Tyler 1992, no writ), a Texas court of appeals adverted to the portion of 11a which states that "[t]he above enumeration is not to be taken as exclusive" and inferred that a "total and permanent loss of use of a leg at or above the ankle *necessarily* inflicts loss of use of the attached foot at or above the ankle. If the leg cannot be used, neither can the foot." *Id.* at 638

> The above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

12

(emphasis added); *see also Texas Employers' Ins. Ass'n v. Gutierrez,* 795 S.W.2d 5, 7 (Tex.App.—El Paso 1990, writ denied) ("the finding of "total loss of use of her right leg' encompasses the loss of the foot at or above the ankle").[8]  We conclude that the district court properly determined that the severity of Pansegrau's injury justified payment of lifetime benefits.

B. Pansegrau's Allegations of Error in Reducing the Judgment

The magistrate judge found that although an additional $281,706.78 of Pansegrau's medical expenses were "medically necessary" and "fair and reasonable," Pansegrau could not recover these charges from National Union because they were either paid by her health insurance or written off by the health care providers as a courtesy to her husband.  The magistrate judge concluded that because she was not charged for these expenses, the court would not allow her to recover damages for these expenses.

In her cross-appeal, Pansegrau argues that she is entitled to recover the additional expenses disallowed by the lower court.  We agree.  We are bound by the decision in *Standard Fire Ins. Co. v. Ratcliff,* 537 S.W.2d 355 (Tex.Civ.App.—Waco 1976, no writ), which

---

[8]National Union cites to the decision in *Northwestern National Casualty Co. v. McCoslin,* 838 S.W.2d 715 (Tex.App.—Waco 1992, writ denied), to support its argument.  However, that case ignores the language of the statute itself which states that the enumeration is not exclusive, fails to acknowledge the prior authority cited above, and involved an individual who, despite the injuries to his legs, was able to "run, walk, stoop over, squat, climb stairs, ride a bike, play basketball, and drive a car."  *Id.* at 716.  Also, we decline to take *McCoslin* as persuasive authority because that decision fails to interpret the provisions of the workers' compensation act liberally.  *See Yeldell, supra* note 3.

considered a workers' compensation claimant who had received payment for her injuries from her health insurance carrier. The court held that the employee could additionally recover a judgment against the workers' compensation carrier because Texas law places an unqualified obligation upon those carriers to provide medical services to injured employees. "The rule is well established in workmens' compensation cases that where the claimant's medical expenses were paid by a third party, the claimant is not deprived of his right to recover the value of such services by the workmens' compensation carrier." *Ratcliff,* 537 S.W.2d at 359 (citing *Cooper v. Argonaut Ins. Co.,* 430 S.W.2d 35, 38 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.); *Northwestern National Ins. Co. v. Kirchoff* 427 S.W.2d 638, 642 (Tex.Civ.App.—Houston 1968, no writ)). This holding was recently reaffirmed in *Cigna Ins. Co. of Texas v. Evans,* 847 S.W.2d 417, 423 (Tex.App.—Texarkana 1993, no writ).[9] Finding no contrary authority, we hold that the district court erred in reducing Pansegrau's recovery by the amount paid by her employer's insurance carrier.

Similarly, those expenses which were written off by the health care providers should not have been deducted from Pansegrau's recovery. Such a reduction contradicts the line of

---

[9]Other authority for this rule includes the following statement from *Texas Jurisprudence:* "The fact that a workers' compensation claimant has received or will receive from a collateral source payments that may have some tendency to mitigate the consequences of the injury that he or she otherwise would suffer may not be taken into consideration in assessing the recovery to which the claimant may be entitled." 75 Tex.Jur.3d *Work Injury Compensation* § 358 (1991).

14

Texas cases which allows recovery for nursing services provided at no cost by family members. *See e.g. Houston General Ins. Co. v. Hamilton,* 634 S.W.2d 18, 20 (Tex.App.—Beaumont 1982, writ dism'd w.o.j.) ("The fact that his mother and grandfather would have helped him anyway without pay is immaterial.").

To the extent that there is a problem with "double recovery" here, it may be addressed by an assignment by Pansegrau of her workers' compensation recovery to the private health insurance company that paid her bills or the providers that wrote off her care. The workers' compensation statute specifically provides for an assignment under the circumstances of this case: "In the event the association denies liability in a claim and an accident or health insurance company provides benefits to the employee for medical aid, hospital services, nursing services or medicine, then the right to recover such amount may be assigned by the employee to the health or accident insurance company." Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(c) (Vernon Supp. 1994) (repealed 1991). None of the parties with potential rights of subrogation or assignment, however, are a party to this action.

The magistrate judge found that an additional $281,706.78 in past medical expenses were necessary, fair, and reasonable but were not included in Pansegrau's award. We believe the district court erred in making these deductions and conclude that the amounts should be reinstated.

### III. CONCLUSION

The decision of the trial court finding National Union liable

15

for Pansegrau's medical expenses is AFFIRMED. The decision reducing the award by the amount of expenses paid by the health insurance carrier or written off as professional courtesy is REVERSED and we REMAND this case back to the district court with instructions to enter judgment in the appropriately adjusted amount.