**TEXAS GENERAL INDEMNITY CO., Appellant,**

v.

**Michael Wheeler MARTIN, Appellee.**

No. 12–90–00222–CV.

Court of Appeals of Texas, Tyler.

May 21, 1992.

Herbert Boyland, Longview, for appellant.

Jim Ammerman, II, Marshall, for appellee.

CHADICK, Justice.[1]

This is a workers' compensation law case. A jury trial resulted in findings that the injuries to Michael Wheeler Martin, plaintiff in the trial court and Appellee here, resulted in total and permanent loss of use of his right hand at or above the wrist, and total and permanent loss of use of his right leg at or above the ankle. Based on these findings, the trial court entered judgment for weekly compensation benefits to Mr. Martin for the rest of his life and payment of weekly installments of earned fees to his attorney for a like period.

Mr. Martin, forty-two years of age, was employed as a journeyman electrician by Southwestern Electric Power Company at the time he was injured, August 21, 1986. With others, Mr. Martin was engaged in stringing a new aluminum electrical line, the diameter of a lead pencil, to a water well system. The new line had to be strung between and over electrically ener-

gized jumpers in a transformer bank. The top of Mr. Martin's right hand made contact with a 7,200 volt energized conductor. An electrical charge entered the top of his hand and exited at his right hip. His clothes caught fire and burned the upper torso, from buttocks up, approximately twenty-eight percent of his body.

■ Texas General Indemnity Company, defendant in the trial court and Appellant here, is Southwestern Electric Power Company's workers' compensation insurer. Texas General does not dispute that Mr. Martin sustained serious injuries in the course of his employment that caused some permanent disability to parts of his body and does not challenge the finding of the jury that he sustained total and permanent loss of the use of his right hand at or above the wrist. It does, however, challenge his right to compensation payments for the rest of his life, based in part upon the findings that his injuries resulted in total and permanent loss of use of his right leg *at or above the ankle.* Injury to his leg does not correspond with any of the injuries, listed (1) through (6) in TEX.REV.CIV. STAT.ANN. art. 8306, § 11a,[2] that are compensated by lifetime benefits under the provisions of TEX.REV.CIV.STAT.ANN. art. 8306, § 10(b).[3] This question will be considered in the discussion of the insurance carrier's first and second points of error. Article 8306, § 11a,[4] effective at the time of Mr.

---

1. The panel before whom this cause was submitted consisted of T.C. Chadick, Associate Justice (retired), the Supreme Court of Texas. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. Repealed by Acts 1989, 71st Leg. 2nd C.S., ch. 1, § 16.01(7) to (9), *current version now found at* TEX.REV.CIV.STAT.ANN. art. 8308–4.31 (Vernon Supp.1992).

3. Repealed by Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7) to (9), *current version found at* TEX.REV.CIV.STAT.ANN. art. 8308–4.31 (Vernon Supp.1992).

4. TEX.REV.CIV.STAT.ANN. art. 8306, § 11a, provided:

Injuries constituting total and permanent incapacity. In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to wit:
(1) The total and permanent loss of the sight of both eyes.
(2) The loss of both feet at or above the ankle.
(3) The loss of both hands at or above the wrist.
(4) A similar loss of one hand and one foot.
(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.
(6) An injury to the skull resulting in incurable insanity or imbecility.
In any of the above enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.
The above enumeration is not to be taken as exclusive but in all other cases the burden of

Martin's injuries on August 26, 1986, enumerated specific injuries that a worker might suffer and provided that incapacity therefrom must be adjudged total and permanent. Reference to Section 11a shows that injury to and loss of use of *a leg at or above the ankle* is not one of the six specific injuries described in the statute. At this point, if Texas General's proposed construction of the statute is made, the appeal turns in its favor and the judgment should be reversed. However, all the terms of Section 11a must be examined and the import of a liberal construction thereof determined.[5] The section must be construed liberally in favor of claimants. *Stott v. Texas Employers' Ins. Ass'n.*, 645 S.W.2d 778 (Tex.1983); *Bailey v. American General Ins. Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955).

■ In his brief, Mr. Martin asserts that loss of use of a leg at or above the ankle encompasses the loss of use of the attached foot. In so many words, Section 11a says that enumeration therein of the injuries constituting a total and permanent incapacity is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove his injuries have resulted in permanent total incapacity. The language of the paragraph has a meaning and purpose. Its wording extends the relief afforded victims of the injuries listed and described in the Section to victims of injuries having the same or a similar effect. The paragraph declares that the enumeration of injuries is not exclusive. The necessary implication of that language is that there are other injuries having the same or similar effect as those described. If the list is not exclusive, other injuries having the same or similar effect are to be given the same consideration that those listed are given in the application and administration of Section 11a provisions.

Section 10(b)[6] appears to be out of harmony with the conclusion just expressed. Section 11a lists by numbers six injuries, and by its last paragraph adds those injuries having a like effect. The paragraph, as demonstrated above, extends its application to injuries other than those listed (1) to (6) and, in that sense, is an enumeration of injuries included in Section 11a as much as those listed by number. *See Coach House Inn, Inc. v. Great American Ins. Co.*, 54 Wis.2d 541, 196 N.W.2d 636, 639 (1972). There it is said,

> Such an "other loss" provision in the statute is certainly more general than the specific hazards listed in the section, but the "other loss" provision is just as much "enumerated" in the statute as any of the specific loss provisions.

The common sense reasoning exhibited by the quotation will be followed. A total and permanent loss of use of a leg at or above the ankle necessarily inflicts loss of use of the attached foot at or above the ankle. If the leg cannot be used, neither can the foot. Texas General's first two points of error are overruled.

■ Texas General's third point of error raises issues as to the legal and factual sufficiency of the evidence to support jury findings of total incapacity and total loss of use of the right leg at or above the ankle, and that such findings are contrary to the overwhelming preponderance of the evidence. The parties agree that guidelines for reviewing evidentiary support of fact findings are well established. In determining if there is legally sufficient evidence to support a finding, the reviewing court con-

---

proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

5. It has been noted that both Sections 10(b) and 11a have been repealed since Mr. Martin's injuries. Material change has been made in the reenacted version.

6. Section 10(b) states:
   If the injury is one of the six (6) enumerated in Section 11(a) of this article as constituting conclusive total and permanent incapaci-

ty, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury. For the purpose of this section only, the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member.

siders only the evidence and the inferences tending to support the finding and disregards all evidence and inferences to the contrary. When determining whether the evidence is factually sufficient to support a finding or that the finding is contrary to the overwhelming preponderance of the evidence, the court reviews all of the evidence, both for and against the finding. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The trial court's charge defined total incapacity and total loss of use for the jury's guidance as follows:

"*Total incapacity*" does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a worker, not merely the usual task of any particular trade or occupation, to such an extent that he cannot get and keep employment requiring the performance of the usual tasks of a worker.

"*Total loss of use*" of a member of the body exists whenever by reason of injury such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the worker cannot get and keep employment requiring the use of such member.

Neither party objected to the definitions, and, as each appears to be correct, they are useful here to indicate the nature of evidence that tends to support a finding upon such issues.

A summary of Texas General's evidence relative to the insufficiency and overwhelming preponderance issues follows. Mr. Martin was initially treated in Shreveport and was referred to a Dallas physician. In attempting to restore function to his right hand, the doctor removed tendons and nerves from both Mr. Martin's lower extremities. The particular areas involved were the feet below the knee. On his right extremity, the surgery stopped four inches below the right knee. The doctor testified that the removed tendons and nerves were "duplicates" and his surgery caused only a minimal, if any, loss of function. The nerves were those that Mr. Martin could live without. There was some loss of sensation to Mr. Martin's feet, but no loss of power or loss of function. Mr. Martin did not complain to the doctor of the loss of function of his feet or leg on subsequent examination.

In February 1990, another doctor examined Mr. Martin and evaluated the loss of use of his right extremity at fifteen percent. The evaluation included the injury to the hip. The doctor found Mr. Martin had substantial utility of his leg and could work if his legs were his only problem. The loss of use of his right leg was only partial. The doctor's opinion was that Mr. Martin could hold down a job that required him to walk or drive.

Mr. Martin, as a witness, testified that he could walk up and down stairs and could stoop and squat. Also, that he was able to do light to medium work, operate a riding mower but elected not to do so until he had additional surgery. He felt he could drive a truck and had driven to Dallas a number of times to see his doctor. The foregoing summary of facts are the foundation of Texas General's several contentions under its third point.

Evidence of disability to get and keep employment requiring the performance of the usual tasks of a workman tends to prove total incapacity, and evidence of the condition of an injured member of the body is such that the worker cannot get and keep employment requiring the use of the injured member tends to prove total loss of the bodily member. Martin primarily relies upon evidence relating to obtaining and keeping employment in rebuttal of Texas General's contentions under its third point.

Mr. Martin testified that Southwestern Electric Power Company allowed him to return to work, but placed him upon inactive status after his nerve graft surgeries. He testified that his toes were sore and unable to be normally raised which caused difficulty in walking; that his right foot is numb; that he had a cut on the foot and did not know it; that there was danger of injury to the foot without his realizing it, including blisters and cuts. A scar extends

from the back of Mr. Martin's knee to his ankle that is sensitive to touch, dry, itchy, and requires frequent moisturization using a special cream. He also has a skin graft site on his right thigh, which is dry, itchy, and requires frequent moisturization with a special cream. There is evidence that Mr. Martin has forty percent less than normal muscle in his right buttock. His right leg is much weaker than his left, he cannot straighten up from a bent position without difficulty; he can walk no more than two blocks without his right leg faltering and giving away; it falters on its own. He has sharp, shooting pains from his buttocks to the back of his right leg, which occur frequently. His condition requires him to frequently take breaks to moisturize his right thigh and back of his right leg from ankle to knee.

The jury was entitled to consider the unsegregated effect of Mr. Martin's general and specific injuries in assessing the loss of use of his leg. *Rivera v. Texas Employer's Ins. Ass'n*, 701 S.W.2d 837 (Tex.1986). Evidence that his employer placed him upon inactive status highlights the practical effect of his injuries as to performance of the usual tasks of a workman, as well as loss of use of his leg above the ankle. Reasonable inferences may be drawn from the testimony that Mr. Martin could not satisfactorily perform because of loss of use of his member. Without repeating the other injuries, the continuing need of treatment, as well as the impairment of function and loss of strength, tend to prove the issues in question. Properly considered, the record contains legally and factually sufficient evidence to support the jury findings and their findings are not contrary to the overwhelming weight and preponderance of the evidence. Texas General's third point of error is overruled.

■ Mr. Martin testified he was concerned and bothered about how 7,200 volts of electricity passing through his body and being under general anesthesia during his eighteen surgeries would affect him in the future. No proof from a medical expert was offered that these facts or events would be disabling nor proof that worry caused disability. Texas General's fourth point of error presents admission of this evidence as error.

The facts said to cause worry were properly shown to the jury. If worry had not been mentioned, the jury knew, as a matter of common knowledge, a present injury condition is calculated to cause worry or worrisome feeling. Worry has numerous meanings, and among others, it means "vexing, troublesome, trying, or irksome."

Under this record, any error in the admission of the evidence does not appear to constitute reversible error, as it does not amount to a violation of Texas General's rights in a way that is reasonably calculated to cause and probably did cause rendition of an improper judgment. *See* TEX. R.CIV.P. 80.

■ Texas General's fifth point of error must be overruled for the reason last stated. A medical doctor was permitted to testify that Mr. Martin was more susceptible to injuries in the future and should not be in situations where he could injure his feet or hands. Such testimony was relevant to employability, which was a principal issue in the case.

■ Over Texas General's objection, the court instructed the jury, *"Injury"* also includes any mental or nervous disorder that impairs the use or control of the physical structure of the body. Error in so doing is the subject of Texas General's sixth and last point of error. The record contains evidence heretofore mentioned that a nerve from Mr. Martin's right leg was removed, which resulted in Mr. Martin's inability to raise the toes in a normal way and interfered with his ability to walk. The instruction was warranted by evidence of a nervous disorder. Again, error, if any, in this respect was harmless.

In summary, it is repeated that, after careful examination of the very difficult issues reviewed, each of Texas General's points of error are respectfully overruled, and the judgment of the trial court is affirmed.