**NORTHWESTERN NATIONAL CASUALTY COMPANY, Appellant,**

**v.**

**Blayne Heath McCOSLIN, Appellee.**

**No. 10–91–205–CV.**

Court of Appeals of Texas, Waco.

Aug. 19, 1992.

Rehearing Denied Nov. 4, 1992.

Dana Livingston McClaren, Cowles & Thompson, Temple, Robert D. Stokes, Flahive, Ogden & Latson, Austin, for appellant.

Michael Thomas, Martin & Thomas, Mexia, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

This is a workers' compensation case. Northwestern National Casualty Company appeals from a judgment for lifetime benefits to be paid in a lump sum to Heath McCoslin. Northwestern brings three points of error asserting that the district court erred in: (1) rendering judgment for lifetime benefits because the jury findings only support an award for 400 weeks of benefits, (2) rendering judgment in a lump sum for lifetime benefits in derogation of article 8306, section 10(d), and (3) refusing to exclude the testimony of Dr. Maurice Laperriere. McCoslin brings one cross-point.

1. *See* Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex.Gen.Laws 1, 114; Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 6, 1972 Tex.Gen.Laws 187, 189–90, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.-01(7), 1989 Tex.Gen.Laws 1, 114.

2. *See* Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 7, 1972 Tex.Gen.Laws 187, 190–92, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex.Gen.Laws 1, 114.

3. *See National Mutual Casualty Co. v. Lowery,* 136 Tex. 188, 148 S.W.2d 1089, 1090 (1940).

On September 11, 1987, McCoslin was injured on the job when he fell through the floor of an attic. He fractured both kneecaps, his left femur, and also suffered internal injuries. Some dispute as to his current state of activity exists, but the evidence reflects that McCoslin can run, walk, stoop over, squat, climb stairs, ride a bike, play basketball, and drive a car. The jury found McCoslin's injuries to be a producing cause of total and permanent loss of use of both legs. Liability for the accident is not disputed.

### Lifetime Benefits

To address Northwestern's first point of error, we must look to the applicable statute and decide whether McCoslin's injury is specific or general. Prior to its repeal in 1989, article 8306 set forth two compensation schemes, a general-injury scheme (sections 10(a), 10(b), and 11)[1] and a specific-injury scheme (section 12).[2] According to case law, injuries are classified either as general, specific, or multiple specific, but an injury could not be classified or compensated as both general and specific.[3] Specific injuries were those expressly enumerated in section 12. In addition, injuries resulting in partial loss of use or disfigurement to a part of the body not listed in section 12 also constituted specific injuries.[4] The last paragraph of section 12 provided compensation under the specific-injury scheme for partial loss of use or disfigurement of a nonscheduled or nonlisted body part.[5] Unlike partial-loss-of-use situations, section 12 did not provide a rem-

4. *Texas Employers' Insurance Association v. Perez,* 673 S.W.2d 669, 672–673 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

5. The relevant part of section 12 provided:

   *In all other cases of partial incapacity,* including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee, and the age at the time of the injury.

edy for the total loss of use of a nonscheduled body part. Therefore, injuries producing a total loss of use to a nonscheduled body part must be compensated as general injuries under section 10.

■ In the case at hand, we hold, for two reasons, that McCoslin suffered a general injury under section 10. First, the jury found that McCoslin suffered a total loss of use of both legs. Second, his injury involved a nonscheduled body part because the jury's finding does not specify that the "loss of use" was "at or above the knee." Therefore, under section 10(a), McCoslin is entitled to at least 66⅔% of his average weekly wages for the duration of his total incapacity.[6]

■ This brings us to the real question at hand: whether a jury finding of total and permanent loss of use of both legs satisfies the requirement for lifetime benefits under sections 10(b) and 11a(2). Section 10(b) authorized lifetime benefits for certain specified injuries. It provided:

> If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, *but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury.*[7]

According to section 10(b), the only injuries compensable for life are those specifically mentioned in section 11a.[8] Of the six injuries listed, only the meaning of section 11a(2) is relevant. Northwestern argues that McCoslin is not entitled to lifetime

benefits because the jury findings reveal a permanent and total loss of use of both legs. McCoslin contends, however, that a loss of use of both legs is necessarily a loss of use of both feet and the jury finding should, therefore, support a judgment for lifetime benefits.

Northwestern asserts that article 8306 defined the terms *leg* and *foot* in sections 12 and 11a respectively. It maintains that "foot" means that portion of the lower extremity below the knee and that "leg" means that portion of the lower extremity at or above the knee. We disagree. Section 12 did not define leg. The purpose of section 12 was to provide a compensation scheme to limit an employee's recovery for certain specified injuries. Thus, the phrase in section 12 that provided, "[f]or the loss of a leg, at or above the knee," merely described the type of injury that was compensable under the specific-injury scheme; the injury had to produce the loss of a leg or the loss of use of a leg at or above the knee.

Just as section 12 did not define the word *leg*, section 11a did not define the word *foot*. The purpose of section 11a was to list the injuries the legislature determined should merit lifetime compensation. The provision did not serve as a definition of foot, but instead, through section 10(b), provided for augmentation of an injured employee's compensation from 401 weeks of benefits to lifetime benefits. Essentially, section 11a was part of the scheme designed to compensate employees for general injuries.

■ Since article 8306 failed to define foot or leg, we are required to give those

Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 7, 1972 Tex.Gen.Laws 187, 190–92 (repealed 1989) (emphasis added).

**6.** *See* Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, (repealed 1989).

**7.** *Id.* (emphasis added).

**8.** Section 11a provided:
   In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:
   (1) The total and permanent loss of the sight of both eyes.

   (2) The loss of both feet at or above the ankle.
   (3) The loss of both hands at or above the wrist.
   (4) A similar loss of one hand and one foot.
   (5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.
   (6) An injury to the skull resulting in incurable insanity or imbecility.
Act approved Feb. 12, 1927, 40th Leg., R.S., ch. 28, § 1, 1927 Tex.Gen.Laws 41, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.-01(7), 1989 Tex.Gen.Laws 1, 114.

terms their plain and ordinary meaning.[9] Webster's defines leg as "one of the appendages of an animal that [is] used chiefly in supporting the body and in moving from point to point ... the part of such a limb between the knee and the foot."[10] Foot is defined as "the terminal part of the vertebrate leg upon which an individual stands consisting ... of all the structures ... below the ankle joint."[11] These definitions are consistent with the compensation schemes of the statute. For example, in a strict loss situation, to receive compensation for the loss of a leg, the statute required that the amputation occur at or above the knee. In other words, the whole leg must be lost. Therefore, if an employee had his leg amputated at the calf, he would not be entitled to recover for the loss of a leg; rather, compensation would be for the loss of a foot. Likewise, to recover lifetime benefits, the statute required that the amputation of both feet occur at or above the ankle. Thus, we find that, because the statute did not define leg or foot, the legislature intended those terms to be given their plain and ordinary meaning.[12]

The situation becomes more complicated, however, when the injury involves the loss of use of a member because, unlike an amputation situation, the mere loss of use of a leg does not necessarily include the loss of use of the foot. Likewise, a finding that McCoslin's injuries produced a total loss of use of both legs does not, in and of itself, mean that he suffered a loss of use of both feet. If McCoslin desired to show he was entitled to lifetime benefits, then he should have requested a specific jury question asking whether he suffered a total loss of use of both feet at or above the ankle. Furthermore, because the jury charge included no definition of leg or foot, we must assume that the jurors applied the plain and ordinary meanings of the words. From this we can only conclude that the jury found a total loss of use of both legs. Without a finding that McCoslin suffered a loss of use of both feet, the verdict will not support a judgment for lifetime benefits.

■ The last remaining issue to discuss, under Northwestern's first point of error, is the duration of McCoslin's compensation benefits. As a general rule, benefits are awarded for the duration of the total incapacity under section 10(a).[13] In the case at hand, the jury found McCoslin's total incapacity to be permanent. Under the general-injury compensation scheme, section 10(b) controls situations involving total and permanent incapacity. Pursuant to this section, an injured employee merits lifetime benefits for any section 11a injury, but in all other cases of total and permanent incapacity the compensation period is not to exceed 401 weeks from the date of the injury. Because McCoslin was not entitled to lifetime benefits, we hold that he is entitled to 401 weeks of compensation under section 10(b). Northwestern's first point of error is sustained to the extent that we reverse the award of lifetime benefits.

### Lump Sum Payment

■ In its second point of error, Northwestern asserts that the trial court erred by rendering judgment for payment of benefits in a lump sum even though the jury found that payment of compensation in weekly installments would result in manifest hardship and injury to McCoslin. Northwestern contends that a lump-sum award of lifetime benefits is not proper unless a bona fide dispute exists as to the carrier's liability.[14] Northwestern main-

**9.** See Tex.Gov't Code Ann. § 312.002 (Vernon 1988).

**10.** Webster's New International Dictionary 1289–90 (3d ed. 1986).

**11.** Id. at 884–85.

**12.** But see Elliott v. American Motorists Insurance Company, 734 S.W.2d 717, 719 (Tex.App.—Tyler 1987, writ ref'd n.r.e.) (holding that section 12 defines leg as the portion of the lower extremity above the knee, and that section 11a(2) defines foot as the portion of the lower extremity below the knee).

**13.** See Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, (repealed 1989).

**14.** Section 10(d) provided in relevant part:

The *lifetime benefits* to the employee payable under this section may not be paid in a lump sum except in a case of bona fide disputes as to liability of the association.

tains that no dispute exists because it has paid weekly benefits to McCoslin since the date of the accident.

As Northwestern points out, sections 8(d) and 10(d) are similar. Both of these provisions limit lump-sum payments. Section 8(d) limits lump-sum payments of death benefits to instances of "remarriage" or "in case[s] of bona fide disputes as to the liability of the association for the death." [15] Section 10(d) limits lump-sum payments of lifetime benefits to "case[s] of bona fide disputes as to liability of the association." [16] However, under point one, we held that McCoslin is not entitled to lifetime benefits because the jury finding of a loss of use of both legs does not support such a judgment. As a result, Northwestern's argument—that section 10(d) precludes a judgment ordering payment of compensation in a lump sum—fails. Section 15, not section 10(d), is the applicable provision in this case. [17]

Because McCoslin is not entitled to lifetime benefits, the issue becomes whether the jury finding, that "payment of compensation, if any, in weekly installments instead of a lump sum [will] result in manifest hardship and injury to" McCoslin, supports a lump-sum award in a non-lifetime-benefit situation. Weekly benefits are the preferred type of payment under the statute. [18] Nevertheless, lump sum awards can be made in certain situations. [19] For example, section 15(a) authorizes the Industrial Accident Board to compel payment in a lump sum if manifest hardship or injury would otherwise result. [20] According to the Texas Supreme Court, section 15(a) also authorizes courts to make this same determination. [21] Because the jury found that weekly payments would result in manifest hardship or injury to McCoslin, we hold that the trial court did not err by rendering judgment for a lump-sum award. We overrule point two.

## Expert Witness

■■■ Lastly, Northwestern contends that the trial court abused its discretion by allowing Dr. Maurice Laperriere to testify at trial. Laperriere testified that he was first contacted to act as an expert witness approximately three months prior to trial. Thirty-two days before the trial McCoslin supplemented his answers to interrogatories stating that he intended to call Laperriere as an expert witness. As a result, Northwestern argues that McCoslin's designation of Laperriere as an expert witness, approximately sixty days after he was first contacted, was not as soon as practical. [22] The trial court has discretion to decide whether a party used due diligence in seeking out and identifying its expert witnesses. [23] Absent any evidence

Act of May 25, 1987, 70th Leg., R.S., ch. 997, 1987 Tex.Gen.Laws 3378, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex.Gen.Laws 1, 114 (emphasis added).

**15.** Act of May 30, 1983, 68th Leg., R.S., ch. 602, § 1, 1983 Tex.Gen.Laws 3841, 3842, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), 1989 Tex.Gen.Laws 1, 114.

**16.** Act of May 25, 1987, 70th Leg., R.S., ch. 997, 1987 Tex.Gen.Laws 3378 (repealed 1989).

**17.** *See* Act of May 26, 1983, 68th Leg., R.S., ch. 995, 1983 Tex.Gen.Laws 5391, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.-01(7), 1989 Tex.Gen.Laws 1, 114.

**18.** *See* Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, (repealed 1989); Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 6, 1972 Tex.Gen.Laws 187, 189–90 (repealed 1989); Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 7, 1972 Tex.Gen.Laws 187, 190–92 (repealed 1989).

**19.** *See* 1 Nations & Kilpatrick, Texas Workers' Compensation Law § 32.02[1] (1992). *See also* Act of May 30, 1983, 68th Leg., R.S., ch. 602, § 1, 1983 Tex.Gen.Laws 3841, 3842 (repealed 1989); Act of May 25, 1987, 70th Leg., R.S., ch. 997, 1987 Tex.Gen.Laws 3378 (repealed 1989); Act of May 26, 1983, 68th Leg., R.S., ch. 995, 1983 Tex.Gen.Laws 5391 (repealed 1989).

**20.** *See* Act of May 26, 1983, 68th Leg., R.S., ch. 995, 1983 Tex.Gen.Laws 5391 (repealed 1989); *see also Twin City Fire Insurance Co. v. Cortez,* 576 S.W.2d 786, 789 (Tex.1978).

**21.** *See Twin City Fire Insurance Co.,* 576 S.W.2d at 789.

**22.** *See* Tex.R.Civ.P. 166b(6)(b).

**23.** *Builder's Equipment Company v. Onion,* 713 S.W.2d 786, 788 (Tex.App.—San Antonio 1986) (original proceeding).

**720**

that McCoslin "expected [Laperriere] to testify" at the time he was first contacted, we hold that the trial court did not abuse its discretion by allowing Laperriere to testify. We overrule point three.

### Cross-point

McCoslin brings one cross-point. He states that Northwestern has brought this appeal without sufficient cause only to delay payment of the lifetime benefits in a lump sum.[24] Having sustained point one, we overrule McCoslin's cross-point.

### Conclusion

Entering a proper judgment will call for calculations that we think could best be made by the trial court with the assistance of counsel. Accordingly, we reverse the judgment and remand the cause for the entry of a judgment awarding McCoslin a lump sum equal to 66⅔% of his average weekly wages for 401 weeks, discounted, pursuant to article 8306a,[25] for present payment at four percent, compounded annually, and reflecting a reduction for weekly compensation benefits previously paid by Northwestern.[26]

Reversed and remanded.

---

24. *See* Tex.R.App.P. 84.

25. Act of March 9, 1955, 54th Leg., R.S., ch. 26, § 2, 1955 Tex.Gen.Laws 36, 36–37, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(8), 1989 Tex.Gen.Laws 1, 114.

26. *See* Tex.R.App.P. 80(c).