**HARTFORD UNDERWRITERS INSURANCE COMPANY,**
**Appellant,**

v.

**Jean BURDINE, Appellee.**

No. 2–00–056–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 15, 2000.

Rehearing Overruled Jan. 25, 2001.

Flahive, Ogden & Latson, Robert D. Stokes, Scott Bouton, Austin, for Appellant.

Noteboom and Gray, Chris Cessac, Jay K. Gray, Hurst, for Appellee.

Before DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### I. Introduction

Appellant Hartford Underwriters Insurance Company appeals from a judgment based on a jury verdict awarding Appellee Jean Burdine lifetime benefits under a workers' compensation claim. In three issues, Hartford contends that the jury's findings are insufficient to support the judgment for lifetime benefits under the Texas Workers' Compensation Act, that there is legally and factually insufficient evidence to support the jury's findings, and that the trial court's judgment improperly awarded future medical benefits under the Texas Workers' Compensation Act. We affirm as modified.

## II. BACKGROUND

Beginning on January 6, 1989, Jean Burdine ("Burdine") was employed as a full-time secretary/bookkeeper by Wes Gregory Industrial ("Wes Gregory"). Hartford Underwriters Insurance Company ("Hartford") was Wes Gregory's workers' compensation insurance carrier. On July 6, 1989, Burdine tried to get up from her desk and fell backwards. She landed in her chair, but the arm and base of the chair broke and, as a result, she suffered a back injury. Burdine sought medical treatment, and during the first year following the accident, she saw various doctors, a chiropractor, and went through physical therapy. She attempted to go back to work on several occasions, but, because of the pain and medication, was unable to return to her work. Burdine's doctors took her off work permanently in November 1990, and she has not worked since.

Burdine subsequently filed a claim for workers' compensation through her employer. At the request of Hartford, Burdine was examined by Dr. Allen Kent, who became her treating physician from that point forward. The record shows that, following Dr. Kent's examination, Burdine was paid compensation for 401 weeks at a rate of $199.62 per week. These weekly payments ended in August 1997.

In December 1997, the Texas Workers' Compensation Commission[1] ("TWCC") entered its final ruling, decision, and award denying Burdine lifetime benefits. Burdine appealed the TWCC decision by filing suit in the 352nd District Court of Tarrant County contending that, because she was "statutorily totally and permanently incapacitated" by her work injury, she was entitled to an award of lifetime benefits under the Texas Workers' Compensation Act (the "Act"). Hartford denied that Burdine was entitled to lifetime benefits under the Act. A jury subsequently found in answer to separate jury questions that Burdine's work injury was the producing cause of permanent and total loss of use of both legs and permanent and total loss of use of both feet at or above the ankles. The trial court rendered judgment on the verdict that Burdine was entitled to an award of lifetime benefits. Hartford appeals that decision.

## III. DISCUSSION

### A. Lifetime Benefits

Hartford contends that Burdine was not entitled to lifetime benefits under the Act. First, Hartford contends that the jury's finding that the Appellee suffered permanent and total loss of use of both legs is insufficient to support a judgment for lifetime benefits under the Act. Next, Hartford contends that the evidence is legally and factually insufficient to support the jury's finding that Burdine suffered an injury to both legs or both feet at or above the ankles resulting in total loss of use of those members. To resolve these first two issues, we must examine the applicable version of the Act and the jury's answers to questions two, three, and four of the questions submitted to the jury.

#### 1. Former Article 8306

■ Former article 8306 of the Texas Revised Civil Statutes[2] applies to this case because it was the version of the Texas Workers' Compensation Act in effect at the time of Burdine's accident. *Tramel v. State Farm Fire and Cas. Co.*, 830 S.W.2d 754, 756 (Tex.App.—Fort Worth 1992, writ

**1.** Formerly the Texas Industrial Accident Board. The Texas Industrial Accident Board was renamed the Texas Workers' Compensation Commission effective April 1, 1990. Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 17.01, 1989 Tex.Gen.Laws 1, 115, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5(2), 1993 Tex.Gen.Laws 987, 1273.

**2.** Act approved March 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex.Gen.Laws 269, 269 (repealed 1989) (current version of Texas Workers' Compensation Act at TEX.LAB.CODE ANN. ch. 408 (Vernon 1996 & Supp.2000)).

denied). Section 11a of former article 8306 provided:

**Injuries constituting total and permanent incapacity**

Sec. 11a. In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:

(1) The total and permanent loss of the sight of both eyes.

(2) The loss of both feet at or above the ankle.

(3) The loss of both hands at or above the wrist.

(4) A similar loss of one hand and one foot.

(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

(6) An injury to the skull resulting in incurable insanity or imbecility.

In any of the above enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.

The above enumeration is not to be taken as exclusive, but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.[3]

In addition, section 10(b) of former article 8306 stated:

(b) If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury. For the purpose of this section only, the total and permanent loss of use of a member shall be considered to be the total and permanent loss of the member.[4]

The two provisions were codified at section 408.161 of the Texas Labor Code which now provides as follows:

(a) Lifetime income benefits are paid until the death of the employee for:

(1) total and permanent loss of sight in both eyes;

(2) loss of both feet at or above the ankle;

(3) loss of both hands at or above the wrist;

(4) loss of one foot at or above the ankle and the loss of one hand at or above the wrist;

(5) an injury to the spine that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg; or

(6) an injury to the skull resulting in incurable insanity or imbecility.

(b) For purposes of Subsection (a), the total and permanent loss of use of a body part is the loss of that body part.

Tex.Lab.Code Ann. § 408.161; *Pacific Employers Ins. v. Dayton*, 958 S.W.2d 452, 458 (Tex.App.—Fort Worth 1997, pet. denied).

*2. Jury's Findings*

Jury questions two, three, and four and the jury's responses to those questions were as follows:

*QUESTION NO. 2:*

Did Jean Burdine receive an injury to both of her legs on or after July 6, 1989 in the course and scope of her employment with Wes Gregory Industrial Waste that was or will be a producing

---

**3.** Act of February 12, 1927, 40th Leg., R.S., ch. 28, § 1, 1927 Tex.Gen.Laws 41, 41 (repealed 1989) (current version at Tex.Lab.Code Ann. § 408.161).

**4.** Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, 3290 (repealed 1989) (current version at Tex.Lab.Code Ann. § 408.161).

cause of any total loss of use of both her legs?

ANSWER: *Yes*

**QUESTION NO. 3:**

Did Jean Burdine receive an injury to both of her feet at or above the ankle on or after July 6, 1989 in the course and scope of her employment with Wes Gregory Industrial Waste that was or will be a producing cause of any total loss of use of both feet at or above the ankle?

ANSWER: *Yes*

**QUESTION NO. 4:**

What is the duration of such total loss of use?

. . . .

Beginning date *Nov. 29, 1990*

Ending date or "Permanent" *Permanent*

*3. Sufficiency of Jury Findings to Support Judgment*

■ In his first issue, Appellant has presented a question on which the Courts of Appeals are in conflict. One court of appeals has held that a jury finding of total and permanent loss of use of both legs, without finding loss of use of both feet at or above the ankles, did not support judgment for lifetime indemnity benefits. *Northwestern Nat'l Cas. Co. v. McCoslin,* 838 S.W.2d 715, 718 (Tex.App.—Waco, 1992, writ denied). Other courts of appeals, however, have held that jury findings of total and permanent loss of use of both legs, alone, will support a recovery under section 11a of former article 8306 under either the "other loss" provision following section 11a(6) or the provision for the "loss of both feet at or above the ankle" of section 11a(2). *Second Injury Fund of the State of Texas v. Avon,* 985 S.W.2d 93, 95 (Tex.App.—Eastland 1998, pet. denied) (holding that jury's findings of total and permanent loss of use of both legs will support recovery under either the "other loss" provision or the provision for the "loss of both feet at or above the ankle."); *City of Del Rio v. Contreras,* 900

S.W.2d 809, 811 (Tex.App.—San Antonio 1995, writ denied) (holding that findings of total and permanent incapacity from the loss of use of both legs at or about the ankles entitled claimant to lifetime benefits under the "other loss" provision of section 11a of former article 8306); *Texas Gen. Indem. Co. v. Martin,* 836 S.W.2d 636, 638 (Tex.App.—Tyler 1992, no writ) (holding the total and permanent loss of use of a leg "necessarily inflicts" the loss of use of the attached foot at or above the ankle); *Texas Employers' Ins. Ass'n v. Gutierrez,* 795 S.W.2d 5, 6 (Tex.App.—El Paso 1990, writ denied) (holding that a finding of the total loss of use of a leg encompasses the loss of a foot at or above the ankle).

Hartford argues that *Contreras* and *Martin* were incorrectly decided and that *McCoslin* was correct. The Fifth Circuit Court of Appeals, however, held that *McCoslin* is distinguishable for several reasons. *Pansegrau v. Nat'l Union Fire Ins. Co.,* 23 F.3d 960, 965 n. 8 (5th Cir. 1994). First, the court in *McCoslin* ignored the language of the statute which states that the six enumerated injuries are not exclusive. *Id.* Second, *McCoslin* fails to acknowledge any of the above-cited authority holding to the contrary. *Id.* Third, the facts in *McCoslin* involved an individual who, despite the injuries to his legs, was able to "run, walk, stoop over, squat, climb stairs, ride a bike, play basketball, and drive a car." *Id.* (quoting *McCoslin,* 838 S.W.2d at 716). Finally, the court in *McCoslin* failed to liberally construe the provisions of the workers' compensation act. *Id.*

Nevertheless, the only challenge to the sufficiency of the jury's findings raised by Hartford in its first issue is whether the jury's finding in question two, that Burdine suffered total loss of use of both legs, will support the *judgment* awarding lifetime benefits under the specific language of section 11a of former article 8306. It is undisputed that, under section 10(b) of former article 8306, a finding of the total loss

of use of a member "shall be considered to be the total and permanent loss of the member" for purposes of the injuries enumerated in section 11a.[5]

In their answers to questions three and four, the jury explicitly found that Burdine had suffered a total and permanent loss of use of both feet at or above the ankle. In *McCoslin*, the Waco Court of Appeals held that, to recover lifetime benefits, the claimant "should have requested a specific jury question asking whether he suffered a total loss of use of both feet at or above the ankle." *McCoslin*, 838 S.W.2d at 718. Question number three in this case complies with *McCoslin* in that respect. Questions three and four specifically tracked the language of section 11a(2) and clearly supported a finding of total and permanent loss of use of both feet at or above the ankles for purposes of an award of lifetime benefits. Regardless of the effect of the jury's answer to question two, the jury's answers to questions three and four are sufficient in themselves to support lifetime benefits, even under a strict reading of section 11a.

The resolution of Hartford's first issue regarding the effect of jury question number two would have no effect on the outcome of this appeal. Therefore, we need not address it. *George Grubbs Enter., Inc. v. Bien*, 881 S.W.2d 843, 851 n. 7 (Tex. App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex.1995) (holding that where the judgment rests on multiple theories of recovery and one theory is valid, an appellate court need not address the other theories).

*4. Legal and Factual Sufficiency of Evidence to Support Jury Findings*

■ In its second issue, Hartford contends that the evidence is legally and factually insufficient to support the jury's answers that Burdine suffered an injury to both feet or both legs resulting in total and permanent loss of use of those members.

The standards of appellate review of evidentiary support of jury findings are well-established. In determining if there is legally sufficient evidence to support a finding, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). When determining whether the evidence is factually sufficient to support a finding or that the finding is contrary to the overwhelming preponderance of the evidence, the court reviews all of the evidence, both for and against the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

The trial court's charge to the jury defined "injury" and "total loss of use" as follows:

**"Injury"** means damage or harm to the physical structure of the body and such diseases or infections as naturally result from such damage or harm.

**"Injury"** also includes any incitement, precipitation, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm.

**"Total loss of use"** of a member of the body exists whenever by reason of injury such member no longer possesses any substantial utility as a member of the body or the condition of the injured member is such that the worker cannot get and keep employment requiring the use of such member.

---

**5.** Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290, 3290 (repealed 1989) (current version at Tex.Lab.Code Ann. § 408.161(b)).

Specifically, Hartford argues that there is no evidence of "injury" directly to Burdine's feet or legs, but only evidence of a spinal injury, which indirectly affected the use of her feet and legs. Hartford also argues that there was no evidence of "total loss of use" of Burdine's legs or her feet at or above the ankles because there was no evidence of loss of substantial utility to both feet and no evidence of Burdine's inability to obtain and retain employment requiring the use of both feet.

Evidence at trial regarding Burdine's injury and its effects is briefly summarized as follows. Burdine described her 1989 accident as follows:

I was at my desk and I was fixing to get up, and as I started to just barely rise, you know, you have your feet under you and you start to push back, the chair tipped and felt like I was falling out, I grabbed the desk and the chair and tried to catch myself, and when I did I twisted. And it hurt, but I thought I'd be okay, you know. And went on and put up my paperwork and went home that evening.

And in the wee hours of the morning then I started hurting more. And then by the time it was time for my children to get up to go to school and everything I decided I should probably see a doctor.

Evelyn Gregory testified that she was also in the office and heard Burdine's accident. She stated that she turned to, see Burdine "twisted" in her chair. Gregory recalled that the base of Burdine's office chair had "broke underneath" and "was sitting kind of cock-eyed, and the arm of the chair was kind of bent over." Gregory stated that Burdine was "really twisted there."

According to Gregory, Burdine was "hurting really bad" by the following morning. Gregory recalled that, at first, Burdine attempted to work "off and on" on a part-time basis. However, even during these attempts, Burdine was unable to do her job properly. Eventually, Burdine's doctor "took her plum off from work."

Gregory testified that Burdine was never again able to return to work at Wes Gregory.

Burdine stated she hasn't been able to work at all since November 1990. Burdine testified that she saw Dr. Gladney the day after the accident. Dr. Gladney treated her for her injury for approximately one year, but he was unable to get her back to work. Burdine said that she attempted to work on several occasions the first year, but she was unable to do so.

Burdine stated that she then went to see Dr. Allen Kent at the request of Hartford, and has been treated by him ever since. Dr. Kent testified that Burdine had "lumbosacral disk disease with radiculopathy, which is nerve irritation." He explained that diagnostic testing confirmed "abnormalities in the lower two disks of her lower back, L4/5 and L5/S1 with nerve injury to the associated nerve roots that exit at those levels." Dr. Kent testified that the nerves in question "go down the legs into the feet."

Dr. Kent then testified that Burdine suffered from a condition called "footdrop," which was caused by the nerve root injuries. He explained that the particular nerve roots injured in Burdine's lower back function to activate main muscle groups that lift her feet when she sits or walks. The injury to those nerve roots caused a muscular malfunction in Burdine's feet, causing her to be unable to lift her feet, causing her feet to "slap the ground," and causing a tendency for her to trip over her own toes.

Dr. Kent testified that Burdine sustained total loss of use of her legs and both feet at or above the ankle within the meaning of the definition provided to the jury. He further opined that Burdine would be unable to get and keep any employment requiring the use of her legs. He stated that Burdine was totally physically disabled and that the total loss of use of her legs and both feet at or above the ankles was a permanent condition. Dr. Kent also

opined that Burdine's injury was a producing cause of the total loss of use of her legs and feet at or above the ankles and that the 1989 injury "precipitated the current problem which has led to the chronic pain and the lower extremity weakness and pain." Dr. Kent finally stated that Burdine's condition made it necessary for him to prescribe an electric wheelchair for her.

Burdine also provided a great deal of testimony in support of her claim. Among various other ailments, Burdine explained that she experienced persistent pain and numbness in both her legs, inability to bend her legs to squat to pick things up, inability to sit with her legs crossed, inability to do her own shopping without assistance, and inability to trim her toenails. She also described how each of her legs sometimes fails to "maneuver," making it very difficult to walk. Burdine finally testified that she knew of no job that she could perform because of the pain in her legs.

In addition to the above-referenced testimony and further testimony from Burdine's husband regarding Burdine's impaired condition, an abundance of medical records was admitted in support of Burdine's claim. All of these records indicate that Burdine suffered a back injury that has resulted in problems with the functioning of both her legs and both feet at or above the ankles.

After a review of all of the evidence, we believe the evidence strongly supports the jury's findings, both legally and factually. First, we reject Hartford's contention that evidence of Burdine's back injury did not support the jury's findings that Burdine suffered an "injury" to both her legs or feet at or above the ankles. Hartford's argument does not take into account the definitions of "injury" given to the jury in the court's charge. The definition of "injury" submitted to the jury was "damage to the physical structure of the body" that

caused the "incitement, precipitation, acceleration, or aggravation" of the condition of both her legs and/or feet at or above the ankles, and Burdine's back injury in this case clearly fits that definition. Because there was far more than a scintilla of evidence to support the jury's finding that Burdine suffered an "injury" to both her legs or feet at or above the ankles, we hold that the evidence supporting this finding was legally sufficient. *Formosa Plastics,* 960 S.W.2d at 48. Moreover, the evidence supporting the jury's finding that Burdine suffered an "injury" to both her legs or feet at or above the ankles was not so weak or the evidence to the contrary so overwhelming that the answer should be set aside and a new trial ordered. *Garza,* 395 S.W.2d at 823.

Likewise, we reject Hartford's contention that the evidence does not support the jury's finding that Burdine suffered a "total loss of use" of both her legs and/or feet at or above the ankles. There was an overwhelming amount of evidence in the form of testimony and medical records to support the jury's finding, both legally and factually, that Burdine's feet and/or legs no longer possess "any substantial utility as a member of the body" and that the condition of Burdine's legs and/or feet at or above the ankles "is such that [Burdine] cannot get and keep employment requiring [their] use." [6]

In sum, the evidence was both legally and factually sufficient to support the jury's findings that Burdine suffered an injury to both her legs and/or feet at or above the ankles that was the producing cause of the total and permanent loss of use of both legs and/or feet at or above the ankles. We overrule Hartford's second issue.

### B. Future Medical Benefits

■ Hartford contends in their third issue that the trial court's judgment improp-

---

6. This definition of "total loss of use" was submitted to the jury and tracked verbatim the applicable definition under former article

8306. *Travelers Ins. Co. v. Seabolt,* 361 S.W.2d 204, 206 (Tex.1962).

erly awarded future medical benefits in violation of section 5 of former article 8307. The trial court's judgment ordered "that Defendant pay all past and future medical expenses which are incurred to cure or relieve from the effects naturally resulting from the injury[.]"

It has been held that section 7 of former article 8306[7] requires the insurer to furnish all medical services as may reasonably be required to cure and relieve the employee from the effects naturally resulting from her injury, but that section 5 of former article 8307[8] prohibits the rendition of an award of judgment for future medical expenses in a workers' compensation case. *Employers Mut. Cas. Co. v. Poorman*, 428 S.W.2d 698, 701 (Tex.App.—San Antonio 1968, writ ref'd n.r.e.). Specifically, section 5 states that no award or judgment against an insurer may include any medical cost or expense that has not been actually furnished to and received by the employee prior to the date of the judgment.[9] Section 5 further states that the TWCC has continuing jurisdiction to render successive awards for future medical benefits, and a claimant's right to recover for future physician and hospital bills paid is dependent on a showing that they were reasonable and necessary.[10]

Burdine concedes that the trial court's award of future medical expenses is improper and suggests that the judgment be "rephrased to reflect that Burdine is entitled to reasonable and necessary future medical benefits within the meaning of [former article 8307]." We agree.

Here, the trial court's judgment does not award any specific dollar amount for future medical expenses. Rather, it awards only those future medical expenses that are incurred to cure or relieve from the effects naturally resulting from the injury. The award is erroneous only to the extent that it omits any requirement that the medical expenses be reasonable and necessary. Accordingly, we modify the judgment to reflect that "Defendant pay all past and future medical expenses which may reasonably be required to cure or relieve from the effects naturally resulting from the injury."

## IV. CONCLUSION

Having disposed of Appellant's issues, we affirm the trial court's judgment as modified.

---

7. Act approved March 28, 1917, 35th Leg., R.S., ch. 103, pt. I, § 7, 1917 Tex.Gen.Laws 269, 272.

8. Act of May 23, 1957, 55th Leg., R.S., ch. 397, § 2, 1957 Tex.Gen.Laws 1186, 1192.

